ZENAS WHEELER, RESPONDENT, *v.* T. S. FARMER, APPELLANT.

PRACTICE ON APPEAL.—Unless the undertaking on attachment be referred to in, or be made a part of, the statement on appeal, it will not be regarded as a portion of the record by the appellate Court.

PARTNERS—ACTION BETWEEN.—No action at law can be maintained, nor can an attachment be sued out, by one partner against another for any matter touching the partnership affairs.

PARTNERSHIP.—In consideration of the right granted him by plaintiff, to make, use, and vend at his (the defendant's) own expense, and on his own account, within the British Dominion, certain machines of which the plaintiff was the inventor, and to sell the right to others to make, use and vend the same, the defendant undertook and agreed to procure from the British authorities letters patent to the plaintiff for said machines, and to pay over, quarterly, to the plaintiff one half the proceeds of all sales made by him. *Held*—not a contract of partnership.

IDEM.—Actual intention is necessary to constitute a partnership *inter se.*

IDEM.—Where there is no community of interest in capital, stock, profit or loss, there is no partnership.

ATTACHMENT—PRACTICE.—There is no objection to the preparation of all the papers requisite, to the writ of attachment, before, or at the same time the complaint is prepared, so that the undertaking and affidavit be not filed in advance of the complaint, and the writ be not issued before the summons and the copy of complaint.

IDEM.—It is not necessary for the affidavit to state the probative facts requisite to establish the ultimate facts required by the statute to be shown as the basis of the writ.

APPEAL from the District Court of the Third District, County of Santa Cruz.

Appeal from the order of the Court refusing to dissolve an injunction.

The case is stated in the opinion.

*John Curry* and *Albert Hagan*, for Appellant.

*First*—Appellant submits that the complaint containing the agreement upon which the suit is based, shows that the plaintiff and defendant, as to the subject-matter of the suit, are partners.

If we are correct in this position, the attachment must be dissolved, for one partner cannot be allowed to maintain an action at law against his co-partner. His remedy is by bill in equity, and for an account.

Wheeler, being the owner of certain patents, desired to sell the same, or to give the others the use thereof. Farmer agreed to enter into a business transaction for that purpose, and agreed to go to Australia on the mission of vending the said patents. He was authorized by the power of attorney to use the name of Wheeler. The patents were sold in Wheeler's name, and the parties were to share alike in the profits ; and Farmer was to collect all the moneys, and account for and pay over to Wheeler one half of the money received on account of the sale and use of the patent right. Farmer was also to render quarter-yearly accounts of his transactions and receipts, under the agreement.

Farmer was not an agent, for he was paid as a partner, and he was to contract independently of Wheeler.

Again, Wheeler reserved the right to revoke the authority, and put an end to the business relations. The plaintiff elects to sue Farmer for one half of the profits of the trans-action.

Here we find the parties forming a familiar kind of part-nership, where one party furnishes the stock in trade, and authorizes another to sell the same, and paying him, *not a salary*, but one half of the *profits* of the enterprise, while the other party furnishes labor and bears other burdens of the enterprise upon his part. This is a familiar principle in the law of partnerships. (Parsons on Part. pp. 54, 55 and 56, and cases thereunder cited ; *Trench* v. *Roberts*, 6 Madd. 145.)

We would refer also to the case of *Stocker* v. *Brocklebank* (3 Mac. and G. 250, 5 Eng. L. and Eq. 67), which is not

unlike this case, except as to the payment of a "*salary*," and had it not been for this stipulation, the Court would have been compelled to find that a partnership existed. It frequently happens that parties enter into a partnership without knowing it. (Parsons on Part. p. 51.)

There may be a partnership both in the property and in the profits—even though it be bought with the funds of one; and it is well settled that there may be a partnership in the profits, when there is none in the property. (Parsons on Part. 47 and 48; Story on Part. 88; Parsons on Contracts, 141; *Meyer* v. *Sharpe*, 5 Fount. 74; *Mumford* v. *Nichol*, 20 John. 611.)

In the case at bar, Wheeler owned the patents; never parted with the property, but agreed that Farmer should procure the patents in his (Wheeler's) name, and then to *make,* *use* and vend the same; and the parties were to divide the profits. Farmer was not a mere paid agent, for he was to act *independently* of Wheeler, making quarter-yearly returns and accounts of his transactions. The idea of a *salary* does not enter into the transaction, but Farmer was to receive one half of the profits, and Wheeler the other half.

It frequently happens that parties are involved in a business transaction with others, and receive their pay in so much of the *gross profits*. The text books seem to settle upon this distinction, viz: that where a party receives *a pro rata* of the profits, as a *salary*, he is not a partner; but when he receives it as *profits*, he is a partner, both as to third parties and *inter se*.

We submit that the agreement in the case at bar fixes the relation of the parties in this respect. (See Parsons on Part. p. 88, note *q;* Story, p. 88; *Cheap, et al.* v. *Cramond*, 4 B. Ald. 663; *Cushman* v. *Bailey*, 1 Hill, 527; *Champion* v. *Bostick*, 18 Wen. 175; Parsons on Contracts, 134–5.)

Whether a man is a partner or not depends upon the nature of his interest in the profits. The profits of a trade are included within the gross proceeds, and if a man is interested as owner, in the latter of these funds, he must be so also in the former; for there is nothing in the mere deduc-

tion in the expenses of the business from its proceeds which affects, in any way, the kind of interest of those concerned therein. Hence the question still must be, not whether a man share in gross or in net receipts, but what is the nature of his interest in either of these funds? If his interest is that of owner, then he is a partner—otherwise not. (Note to Parsons on Part. p. 91; Parsons on Contracts, 132, note *q; Bradlung* v. *Smith*, 21 Me. 117; *Reid* v. *Hollinshead*, 4 B. and C. 867; *Bond* v. *Pittard*, 3 M. and N. 357; *Musier* v. *Trumpour*, 5 Wen. 274.)

Where one person furnishes funds for carrying on a trade, and another gives his personal services, for which he is to receive a *portion* of the profits, they are partners. (*Dob* v. *Halsey*, 16 Johns. 34.)

So, also, the question of profits has been settled in numerous cases. When a party receives a certain share of the profits of an adventure with another, *as profits*, whether it is the result of capital or labor, he is a partner in the enterprise. (*Ogden* v. *Astor*, 4 Sandf. 311; *Pattison* v. *Blanchard*, 1 Seld. 186; 6 Barb. 537; *Heimstreet* v. *Howland*, 5 Den. 68; *Brockway* v. *Burney*, 16 Barb. 309.)

It has been held by text writers, as also by eminent judges, that a person is liable, as partner, when he has such an interest in profits as will give him a right to demand an accounting. (3 Kent. Comm. p. 25, note *b;* Cary on Part. ·11, note *i;* Collyer on Part. Sec. 44—note; *Heimstreet* v. *Howland*, 5 Denio, 68; *Penny* v. *Cabbott*, 6 Met. 92; *Garr* v. *Redman*, 6 Cal. 576.)

In the case at bar there is no pretense that any balance has been struck, or that there has been an accounting, so an action at law cannot be maintained. The attachment must, therefore, be dissolved. (*Murray* v. *Bogert*, 14 Johns. 118; *Pattison* v. *Blanchard*, 6 Barb. 537; also, *Attwater* v. *Fowler*, 1 Hall, 180.)

Defendant respectfully submits, that the pleadings show a partnership, and that the attachment was improperly issued.

*Ferdinand J. McCann* and *Albert Heath,* for Respondent.

"The two leading principles of a partnership," says Kent (3d Com. 24), "are a common interest in the stock of the company and a personal responsibility for the partnership engagements." In 12 Conn. 69, and in 18 Wend. 175, we find it laid down that a specific interest in the profits "as profits" is the test. Lord Eldon is the author of this test. (17 Vesey, 404.) Judge Story says that "as profits" mean "net profits," (Story on Part. 51.) In *Simpson* v. *Felt,* the Court said : "I take it this distinction runs through all the cases—if a person derives a certain emolument from the trade, then he is not a partner; if his emolument depends upon the profit and loss, then he is considered as a partner." (1 McCord Ch. 219.) Other authors say that parties are partners when they are "mutual agents" or "principal traders," or when "each one is entitled to an account."

Each and all of these tests have been criticised, but not destroyed. (See Perkins' note to Collyer on Part. 3d ed. p. 34.)

Later than these criticisms, Chief Justice Tindal (in 3 Man. G. & Scott's R. 32, 39) considers that there must be a participation in the *profit and loss.* No authority has rejected these tests, because no one ventured to put out the lights we had to guide us through those cases of obscurity, without erecting others of equal power and brilliancy.

From the views taken by the counsel for appellant of the criticisms of Judge Parsons, found in his text and notes from page 88 to 92, in the work before cited, they make him an exception. They seem to consider that this learned author has condemned those tests. And it is certain that he has furnished no substitute for them. But it is not necessary to adopt this view, for in these pages the author speaks of the partnership relation only *as to third persons,* and argues that the absence or presence of these tests should neither shield partners from, nor inflict upon them, responsibility. And again, the uselessness of destroying these tests is so obvious, that we cannot acquiesce in this view. Without them, the difficulty of determining in doubtful

cases is increased, if, indeed, the difficult problem would not often arise to determine the character of a partnership without this relation being expressed, and without the means from which this relation could be implied. Such propositions are not impossible, though they may be impossible of solution.

We may then try this instrument by any or by all of these tests and we must find the elements of a partnership wanting in the contract. The plaintiff does not stipulate for any interest in the stock of Farmer's Australian business, but he does stipulate that he is not to be responsible for any engagement in carrying it on, for, " it is mutually covenanted and agreed that the said party of the second part (Farmer) shall make all contracts in carrying out this agreement on his own responsibility, and that said party of the first part shall in no manner be bound therefor."

We find that Wheeler takes no interest "in the profits" or "net profits," for Farmer "shall account for and pay over to the said party of the first part, one half of the *money received* on account of the use and sale of said patent right."

Here, too, we see that the plaintiff's "emolument is certain, and does not depend upon " profit and loss. " The plaintiff instead of being " a principal trader " in this event, expressly declares that he will have nothing to do with the business. We can find no pretense to give him "a specific lien " for this money over and above the other creditors of Farmer, other than that given by the attachment law. And he is entitled to no other " accounting" from Farmer, except the accounting which is the fruit of his judgment in a suit at law. If it can be said that under the English system the plaintiff could discover how much a defendant owed him on a contract, by a suit in chancery, and therefore this test is indefinite, it is not liable to this criticism under our system, where bills of discovery are taken away.

The defendant, on the other hand, had no interest in the one half of the receipts coming to plaintiff; he could not pay his creditors with it, nor increase his business thereby. To do so was simply a violation of· the contract, for "the said party of the second part shall render to the said party

of the first part quarter-yearly accounts of his transactions and receipts under this agreement, and shall make, at the same time, remittances to the said party of the first part of all moneys which shall be due and coming to him under the provisions of this agreement."

SPRAGUE, J., delivered the opinion of the Court:

This appeal is from an order denying appellant's motion to discharge an attachment. Suit was commenced by plaintiff, and attachment issued on the 14th of May, 1868. Summons was personally served on the defendant on the 14th of May, 1868, and the attachment was duly levied on certain real estate and personal property on the 15th of May, 1868. On the same day (15th of May), defendant served on plaintiff's attorney a notice, that, on the 20th of May, or as soon thereafter as counsel could be heard, he would apply to the Judge of the Court in which the action was pending, and move to have the writ of attachment discharged, upon the grounds : First—That the same was improperly issued before the issuance of the summons in the cause, and that no undertaking in attachment had been filed ; Second—That no affidavit in attachment had been made or filed as required by law.

In pursuance of the notice, the motion was heard before the Judge, and on the 21st of May was denied ; from which order defendant appeals, and in his statement on appeal specifies, as particular errors and grounds upon which he intends to rely on the appeal, the following :

"*First*—That the Court or Judge erred in refusing to discharge said writ of attachment, upon the grounds that the complaint shows that a partnership exists between the parties plaintiff and defendant.

"*Second*—The Judge erred in holding that an attachment could issue in this case, and denying defendant's motion to discharge the same, on the ground that this was not a case in which an attachment could issue.

"*Third*—In refusing to discharge the said writ upon the

ground that no affidavit was made in said action as required
by law, and that said affidavit is insufficient."

The statement on appeal refers to and makes a part thereof,
the complaint, the notice of the time and place of hearing
said motion to discharge, the writ of attachment, the affi-
davit for attachment and the order of the Judge denying
such motion.

The motion to discharge the attachment was made before
the time for answer had expired, under the one hundred and
thirty-eighth section of the Practice Act. The notice speci-
fies the grounds of the motion, but does not state the docu-
ments or papers which the moving party proposes to use,
or upon which the motion is predicated; but from the state-
ment upon appeal and specification of errors upon which
appellant states he will rely on appeal, the papers used on
such motion were evidently the papers referred to and made
part of such statement, to wit: The complaint, affidavit for
and writ of attachment.

The undertaking on attachment is not referred to or made
part of the statement on appeal, and the errors assigned,
upon which appellant states he will rely on appeal, have no
reference to the undertaking on attachment; hence, we can-
not regard it as forming a legitimate portion of the record
on appeal, or notice the point made thereon in the argument
of counsel, as it is apparent no such point was made or
argued on the hearing of the motion in Court below.

The first and second specifications of error involve but the
simple question, whether the power of attorney and written
agreement between plaintiff and defendant, set out in the
complaint, constitute the plaintiff and defendant partners in
the business to which the agreement relates as between
themselves. If, by this agreement, they were partners *inter
se*, then this action cannot be maintained; the attachment
was improperly issued and should have been discharged on
defendant's motion. The complaint sets out *in haec verba*
the contract upon which the defendant's alleged indebted-
ness accrued, as follows:

"*Know all men by these presents*, That I, Zenas Wheeler,
of the City of San Francisco, and the State of California,

have made, constituted and appointed, and by these presents do make, constitute and appoint T. Seelye Farmer my true and lawful attorney for me, and in my name, to obtain and procure anywhere in the Kingdom of Great Britain, letters patent, to be issued in my name, for the following machines or devices, for which letters patent have been duly granted to me by the Government of the United States of America, viz :

"*First*—An improved amalgamator, letters patent for which were granted to me, as aforesaid, on the 29th day of November, 1864.

"*Second*—An improved machine for collecting and separating amalgam and mercury from ore pulp, for which letters patent, as aforesaid, were issued to me on the 10th day of May, 1864.

"*Third*—A stamping mill for quartz, for which letters patent were granted to me, together with C. K. Hotaling, as my partner aforesaid, on the 21st day of June, 1864.

"*Fourth*—An improved machine for amalgamating gold and silver, for which letters patent were granted to me on the 8th day of December, 1863.

"And my said attorney is further authorized to sign my name to all necessary papers and instruments of writing, to obtain and procure letters patent, as aforesaid ; and further, upon obtaining said letters patent, to make, vend and use the said patent, and sell to others the right to make, vend and use the said patents anywhere in the said dominions of the said Kingdom of Great Britain ; and for me, and in my name, to make, execute and deliver all necessary instruments in writing to carry out the powers and authority herein granted, hereby ratifying and confirming all that my said attorney may do in the premises as fully as if I were personally present and performing myself the said acts and deeds.

"In witness whereof, I have hereunto set my hand and seal, this 3d day of January, 1865.

(Signed)  "ZENAS WHEELER.  [Seal.]

"[Five cent revenue stamp, cancelled.]"

"Memorandum of an agreement made and entered into by and with Zenas Wheeler, of the City of San Francisco, and State of California, of the first part, and T. Seelye Farmer, of the second part, witnesseth : That, whereas, the said party of the second part is about to depart hence for Australia, fully empowered and authorized by the party of the first part to procure and obtain in the name of the said party of the first part, anywhere in the dominions of the

Kingdom of Great Britain, letters patent for the following machines or devices, for which letters patent have been duly granted to the said party of the first part by the Government of the United States of America, viz:

"*First*—An improved amalgamator, letters patent for which were duly granted to the party of the first part, as aforesaid, on the 29th day of November, 1864.

"*Second*—An improved machine for collecting and separating amalgam and mercury from ore pulp, from which letters patent, as aforesaid, were re-issued to the party of the first part, on the 10th day of May, 1864.

"*Third*—A stamping mill for quartz, for which letters patent were granted to the party of the first part, together with one C. K. Hotaling, as his partner, on the 21st day of June, 1864.

"*Fourth*—An improved machine for amalgamating gold and silver, for which letters patent were granted to the party of the first part, on the 8th day of December, 1863.

"Now, in consideration of $1.00 paid by said second party to said first party, it is agreed by and between the parties to this instrument that the said party of the second part shall have the right to make, vend and use, or authorize others to make, vend and use, the said patents, when the same shall have been so obtained and procured from the lawful authorities of said Kingdom of Great Britain, for the best prices he can procure therefor. And it is further agreed, that the said party of the second part shall collect and receive all moneys which shall be due and owing on the sale and use of said patents, as above mentioned, by reason of his transactions under this agreement, and shall account for and pay over to the said party of the first part one half of the moneys received on account of the sale and use of the said patent right. That the said party of the second part shall render to the said party of the first part quarter-yearly accounts of his transactions and receipts under this agreement, and shall make at the same time remittances to said party of the first part, of all moneys which shall be due and coming to him under the provisions of this agreement. And it is further covenanted and agreed, that the said party of the second part shall make all contracts in carrying out this agreement on his own credit and responsibility, and that said party of the first part shall in no manner be bound therefor. And it is further agreed and stipulated that the said party of the second part shall use all due diligence in procuring the letters patent, as authorized, and in making sales of the rights as aforesaid; and upon the failure or neglect of the said party of the second part to use such diligence, or upon his failure

to carry out and perform any of the terms and stipulations of this agreement, the said party of the first part shall have the right to revoke the authority given him, the said party of the second part, by a letter of attorney, bearing even date with this instrument, and to cancel and put an end to this agreement.

"In testimony whereof, the said parties have hereunto set their hands and seals, this, the 3d day of January, A.D. 1865.

"ZENAS WHEELER,    [Seal.]

"T. SEELYE FARMER,    [Seal.]"

These two instruments relate to the same subject-matter, were executed the same day, and each seems to have been prepared with direct reference to the other, and hence should be read and construed as constituting but one transaction or contract between the parties for the purpose of arriving at their intention and determining their relations, respective rights and obligations thereunder. It is from this contract alone, as the case is presented, that we are to determine whether the relation of partners *inter se* existed between the parties thereto, in respect to the particular enterprise contemplated or provided for.

Actual intention is necessary to constitute a partnership *inter se.* There must be a joint undertaking to share in the profit and loss. Each party must, by the agreement, in some way participate in the losses as well as the profits. (3 Kent. Com. 23 to 28; *Hazzard* v. *Hazzard,* 1 Story, 273; *Denery* v. *Cabot,* 6 Met. 89; *Muzzy* v. *Whitney,* 10 Johns. 228; *Chapion* v. *Bostwick,* 18 Wend. 181; *Patterson* v. *Blanchard,* 1 Seld. 189; Story on Part. Secs. 36–60; *Loomis* v. *Marshall,* 12 Conn. 76.)

An agreement to divide the gross earnings does not constitute the parties to it partners. (1 Seld. 191, *supra;* Story on Part. Sec. 34, and cases cited in note 3.)

From the terms of the entire contract it is very evident that the parties thereto did not intend to create a parnership, either as between themselves or as between themselves and third persons, and as between the parties, no partnership was thereby created. The essential elements of a partnership *inter se* are wanting. There is no community of interest in

capital, stock, profit or loss. The defendant is constituted the attorney in fact, or agent of plaintiff, to procure, in the name and to the use of plaintiff, from the proper authorities of the Kingdom of Great Britain, letters patent for certain machines and devices, for which letters patent had been previously granted to plaintiff by the Government of the United States; and, upon obtaining such letters patent from the proper authorities of the Kingdom of Great Britain, defendant was authorized to make, vend and use said patents for the best prices he could procure therefor; and it was further agreed by and between the parties, that the defendant should collect and receive all moneys which should become due and owing on the sale and use of said patents, by reason of his transactions under the agreement, and account for and pay over to the plaintiff one half of the moneys received by him on account of the sale and use of said patent right quarter-yearly. That the defendant should make all contracts in carrying out the agreement on his own credit and responsibility, and that the plaintiff should, in no manner be bound therefor. That the defendant should use all diligence in procuring letters patent, as authorized, and in making sales of the patent rights; and, upon his failure or neglect to use such diligence, or upon his failure to carry out and perform, on his part, any of the terms and stipulations of the agreement, the plaintiff reserved the right to revoke the power of attorney, and cancel the agreement. In brief, the plaintiff, being a patentee of certain machines and devices under the Government of the United States, and the owner and holder of the franchise thus secured, entered into an arrangement with the defendant, by which the defendant, in consideration of one half the proceeds of the sales of such machines and franchises within the dominions of the Kingdom of Great Britain, and the authority thereto by the plaintiff conferred, undertook to procure from the proper authorities of the Kingdom of Great Britain, in the name of the plaintiff, letters patent for the same inventions and devices of plaintiff, and to make, vend and use such devices, and sell to others the right to make, vend and use the same anywhere within the Kingdom of Great Britain, at his own

individual expense, and on his individual account and responsibility, and to account to plaintiff, and pay over to him, quarterly, one half of all his gross receipts for the use and sales of such patented devices, and sales of rights to others to manufacture or use the same. In the conduct and management of this business within the Kingdom of Great Britain, plaintiff had no voice or right of control, and, as between the parties, incurred no liability for expenses of such business, or losses sustained in its conduct. He simply reserved the right to revoke the power conferred upon defendant, and cancel the agreement with him, on his neglect or failure to comply with its terms. And on defendant's failure or refusal to pay to plaintiff money which, by the terms of this agreement, he had obligated himself to pay, the plaintiff clearly has his action to recover; and whatever amount of money defendant may have received on sales of machines, or patent rights therefor, during any three months, at the end of such three months one half of such amount, by the terms of the contract, was due the plaintiff as a specific, definite debt, to secure which an attachment might issue. (*Hathaway* v. *Davis*, 33 Cal. 161.)

The only remaining specification of error is based upon the alleged insufficiency of the affidavit for attachment. The objection that the affidavit was made before the commencement of the suit, is manifestly untenable. Although, under our code, a writ of attachment cannot properly issue until after the commencement of the suit, to which it is only auxiliary, still there seems to be no valid objection to a complete preparation of all the papers requisite to the writ of attachment before or at the same time the complaint is prepared, so that the affidavit and undertaking in attachment be not filed in advance of the original complaint, and the writ not issued in advance of the summons and certified copy of the complaint, to which it is incident.

The objection that the affidavit does not state the probative facts necessary to establish the ultimate facts required by statute to be shown as the basis of the writ, is not well taken.

Under our statute, it is the duty of the Clerk of the Court in which the suit is commenced to issue the writ upon the

filing by the plaintiff of an affidavit stating the ultimate facts in the language of the statute, together with an undertaking, in amount and form as defined by statute. Upon such compliance with the statute, the plaintiff demands, as a right, the issuance of the writ, and, in issuing the writ, the Clerk has no discretionary power. He but performs a ministerial duty in obedience to a plain statutory mandate. The authorities cited from New York Reports, to which our attention is called by appellant, are all applicable to cases arising under the revised statutes and codes of procedure of that State, each of which, in essential particulars, is different from our statute. There the issuance of the writ, both under the revised statutes and code, is only upon the order of a judicial officer to whom application for the writ is made, who, in a judicial capacity, acts upon the application, and either grants or denies the writ. And under the revised statutes, such writ, when granted, is the original process in a special proceeding. The state of facts authorizing the writ, under both the revised statutes and code, must be established to the satisfaction of the judicial officer to whom the application is made. (*Foreman* v. *Waller*, 13 How. Pr. R. 352; 2 R. S. N. Y. pp. 187–8, Secs. 2, 3, 4, 5 and 6; p. 214, Sec. 1; N. Y. Code, Secs. 228, 229 and 230.)

Order affirmed.

SANDERSON, J., expressed no opinion.