[Civ. No. 3560.   Third Appellate District.—September 29, 1928.]

CHARLES A. DE RIGNE, Appellant, v. RICHARD A. HART, Respondent.

Max Schleimer for Appellant.

William Schreider for Respondent.

HART, J.—The plaintiff sued the defendant to recover damages in the sum of $5,000 for the alleged breach by the latter of a certain contract made by and between the parties. The contract, which is in writing, is set out in the complaint *in haec verba*, and as so pleaded is as follows:

"Los Angeles, California,

"October 1–1924.

"Agreement between Charles A. De Rigne of the first part and Richard D. Hart of the second part. I Richard D. Hart have entered into agreement with Charles A. De Rigne to Fiance and Promote the De Rigne Automobile Motor Eliminator, Serial number 726576, patent pending.

"For my consideration of fiancing this proposition, I am to receive Fifty per cent (50) of the business and Fifty per cent (50) of all gross receipts, and all accounts shall be agreed upon by both parties.

"To promote the above De Rigne Automobile Motor Eliminator we Charles A. De Rigne and Richard D. Hart have entered into the business of Manufactoring and sell-

ing the above article under the name of The De Rigne and Hart Manufacturing Company.

"At any time that we shall consider to sell the business shall be divided equally fifty per cent (50).

"Within any time after the First of the Year Nineteen Hundred twenty five (1925), that either party should become dissatisfied, the other party as the exclusive right to buy or sell. In case of death of either parties, the wifes or heirs of the above said parties, shall go right ahead with the business if they so desire, Minnie May De Rigne, Emma Zaiser Hart.

"All money collected from the business, shall be deposited in the bank, (whatever such bank shall be) in the name of The De Rigne and Hart Mfg. Co., and all checks must bare the signature of both.

"RICHARD D. HART.

"CHAS. A. DE RIGNE."

The court below sustained a general demurrer to the complaint and allowed the plaintiff ten days within which to file an amended pleading. The plaintiff failed to file an amended complaint within the indicated time, and judgment dismissing the complaint was thereupon rendered and entered. The plaintiff appeals from said judgment.

The legal integrity of the judgment appealed from rests upon the solution of the question whether the contract above reproduced herein is and was intended as an executed agreement of partnership between the parties to this action, or was and is, and intended to be only, an executory contract providing for the formation in the future of a partnership, the consummation thereof to depend entirely upon the actual advancement by the defendant to the plaintiff of the finances which he (defendant) therein agreed to advance "to finance and promote (as the preamble of the agreement reads) The De Rigne Automobile Eliminator," etc. ▆ If the above written instrument was intended by the parties to constitute written evidence of the formation of a partnership between them, or, in other words, if it was the intention of the parties that the effect of the instrument upon its execution by both was itself to establish a partnership *inter sese*, then the demurrer to the complaint was properly sustained, since it is a thoroughly established rule that partners cannot sue one another at law in

respect to any of the business of the partnership, or to recover damages from the one or the other of the copartners for a breach of the partnership agreement. (*Stone* v. *Fouse,* 3 Cal. 292, 294; *Russell* v. *Ford,* 2 Cal. 86; *Buckley* v. *Carlisle,* 2 Cal. 420; *Nugent* v. *Locke,* 4 Cal. 318, 320; *Pico* v. *Cuyas,* 47 Cal. 174; *Fisher* v. *Sweet,* 67 Cal. 228, 230 [7 Pac. 657]; *Bremner* v. *Leavitt,* 109 Cal. 130 [41 Pac. 859]; *Dukes* v. *Kellogg,* 127 Cal. 563 [60 Pac. 44]; *Rassaert* v. *Mensch,* 17 Cal. App. 637 [120 Pac. 1072]; *Streeter & Riddell, Inc.,* v. *Bacon,* 49 Cal. App. 327 [193 Pac. 285].) As the foregoing cases say, the remedy is by a suit in equity for a dissolution of the partnership and an accounting and settlement of the partnership affairs. ■ And as is further said in those cases, if any of the partners have by their conduct injured the partnership business, or have breached the partnership agreement and damage to the partnership or the other copartners as such has resulted, evidence showing such breach and damage is admissible in the suit for a dissolution of the partnership and the damage considered in the accounting as among the partnership affairs to be settled therein. (See in particular on this proposition *Dukes* v. *Kellogg, supra,* and *Rassaert* v. *Mensch, supra.*) As before stated, the important question then is: Did the parties to this action intend to form themselves into a partnership by the agreement hereinabove set forth to take effect and be in force immediately upon the making of the agreement? The learned trial judge of the court below, as is obvious from his ruling on the demurrer, construed said writing as a partnership agreement, and held, as would necessarily be the result under such construction of the writing, that the plaintiff, by the institution of this action, has not pursued the proper remedy for the righting of the alleged wrong of which he complains.

The agreement, as will readily be observed on an inspection thereof, is not skillfully phrased, it having evidently been drawn by some person without experience in drafting legal documents; yet its language is not so wanting in clarity as to make it a matter of serious difficulty to ascertain therefrom the nature of the legal relation which the parties to the instrument actually intended should thereby be created between them.

█ It will be noted that in language the meaning of which cannot be misunderstood, the second paragraph of the agreement declares that, "to promote the above De Rigne Automobile Motor Eliminator we Charles A. De Rigne and Richard D. Hart *have entered into the business of Manufactoring and selling the above article under the name of The De Rigne and Hart Manufacturing Company.*" Here is a plain and unequivocal declaration that the parties *have* together entered into the business named. Paraphrased in accord with a rational interpretation thereof, said language cannot have been intended to mean anything short of this: "That we (meaning the parties) have by these presents jointly entered into the business of manufacturing and selling the above article under the firm name of 'The De Rigne & Hart Manufacturing Company.' " This construction of the second paragraph of the agreement is supported by the succeeding paragraphs. The two paragraphs immediately following the second contain stipulations, common to partnership agreements, providing for the adjustment of the partnership affairs upon the happening of contingencies to which such business relationships between several partners are naturally subject and which may arise at any time during the existence of a partnership, viz.: How or in what proportion as between the partners the proceeds of the business and its essential equipments shall be divided, in case of a sale; that if either partner should become dissatisfied "within any time after the first of the year 1925" (the agreement was made October 1, 1924), the other party is to have "the exclusive right to buy or sell"—that is (as would seem to be the only reasonably permissible construction of that stipulation), in case one of the partners became dissatisfied with the business or for any reason the partnership relation, he should either buy the other's interest or sell the latter his interest; that, in case of the death of either of the partners, his wife or his heirs shall, with the surviving partner, proceed with the further prosecution of the business as the successor of the deceased partner, if she so desires. The last paragraph provides that all moneys derived from the business shall be deposited in a bank agreed on in the name of "The De Rigne and Hart Manufactoring Company" and that "all checks shall bare (bear) the signature of both."

214

The stipulation that if either party "within any time after the first of the year 1925" should become dissatisfied, "the other party as (has) the exclusive right to buy or sell," is noticeably significant in its bearing upon the question whether it was the intention of the parties to the agreement that the writing was to stand as written evidence of a partnership which had previously been, or at the time of the making of the agreement and by reason thereof was, formed between them. The agreement was, as seen, executed by the parties on the first day of October, 1924—three months from the time within which (at any time) either party might, if dissatisfied with the arrangements provided for by the writing, either sell to the other party or buy from him his interest. If the instrument was not intended as a partnership agreement, what was there by reason of the agreement or that was created thereby that either party would have to sell or buy? If it was not the intention of the parties to create a partnership at the time of the making of the agreement and none was created thereby, when was the partnership relation to begin? The agreement does not say that the partnership relation should not begin until the first of the year 1925. To the contrary, that particular stipulation may well be construed to presuppose the existence of a partnership at the time of the making of the agreement that the instrument itself was intended as a partnership agreement. When considered in connection with the other provisions of the agreement such construction of said stipulation seems to be entirely sound. But the complaint itself in effect construes the agreement as we view it. It is therein alleged that, after the making of the agreement, and on or about October 10, 1924, the plaintiff, upon the written order of the defendant, employed the Mulford Manufacturing Company to manufacture certain patterns and moulds "of said device and invention," referring to the "De Rigne Automobile Motor Eliminator"; that, on October 20, 1924, the plaintiff, "upon the written order of the defendant," employed "Kay-Brunner Steel Casting Co. to manufacture certain castings of said device and invention from the patterns and moulds manufactured by the Mulford Manufacturing Company"; that on October 25, 1924, "with the consent of the defendant," the plaintiff rented "a certain space" of certain described premises in

the city of Los Angeles "for the purpose of conducting the said business"; that, on October 25, 1924, the plaintiff, "with the consent of the defendant," employed a certain named concern "to manufacture certain tools in the said business and to render certain services in connection therewith," that on November 15, 1924, the plaintiff, "with the consent of the defendant," rented certain space in certain described premises other than the space so rented as above stated, for the purposes of the business; that also on November 15, 1924, the plaintiff, "with the consent of the defendant, purchased certain lumber from Mox Incorporated, to make a partition of the said space to be used and occupied by *the said business.*" It is perfectly clear from the fore- · going averments of the complaint that the partnership between the parties was launched and actively being prosecuted for a period in excess of two months prior to the date (December 23, 1924) of the filing of the complaint in this action.

But the point is made by the plaintiff that the agreement cannot and does not constitute the parties to it partners, because it provides, so it is contended, for a division between the parties, not of the profits, but of the gross earnings of the business, citing *Wheeler* v. *Farmer,* 38 Cal. 203, 213, and *Freeman* v. *Sullivan,* 86 Cal. App. 200 [260 Pac. 807]. (See, also, Story on Partnership, 7th ed., sec. 34, and footnotes.) As seen, the paragraph of the agreement giving rise to that point provides:

"For my consideration of fiancing this proposition, I am to receive Fifty per cent (50) of the business and Fifty per cent (50) of all gross receipts, and all accounts shall be agreed upon by both parties."

It is obvious that the parties did not intend to say what the language of that paragraph seems to imply. If it was the intention of the parties that the defendant was to receive fifty per cent of the business—that is, to own one-half of the business—and receive fifty per cent or one-half of all gross earnings of the business, there would be little, if anything, left of the business for De Rigne. It is not probable that a person of ordinary intelligence (and we must assume that the plaintiff possesses that degree of intelligence) would intentionally bind himself to an agreement the very operation of which would ultimately if not

immediately divest him of all interest in the business. But a fair and enlightened consideration of the writing as a whole will show and does show that the intention of the parties was that they were to share equally in the ownership of the business and in the profits derived therefrom. For instance, the provision in the writing that "at any time that we shall consider to sell, the business shall be divided equally fifty per cent (50)," itself clearly indicates that the intention was that the parties were to be equal partners in the business, and to share equally in the profits thereof. Again, we find in the very paragraph we are now considering this clause: "All accounts shall be agreed upon by both parties." If it was the intention that the defendant was to receive fifty per cent of the gross receipts, what interest would he have in the accounts? Clearly, none. But if, as seems to be true, the defendant's agreement to the accounts was to be required or was necessary, it is, of course, manifest that he was to have an interest therein, and that the defendant was to receive fifty per cent only of the net receipts, or, as it is expressed in the previous clause of said paragraph, "fifty per cent of the business."

But we need not further pursue the discussion. We are satisfied that it must be held that the instrument involved herein is and was intended by the parties as an executed agreement whereby the parties thereto intended to effect and did effect an association between themselves, "for the purpose of carrying on business together, and dividing its profits between them" (Civ. Code, sec. 2395), and that the agreement, being wholly silent as to the division of losses, the instrument itself implies an agreement "for a corresponding division of the losses." (Civ. Code, sec. 2404.)

The judgment appealed from is affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on October 29, 1928, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 26, 1928.

All the Justices concurred.