[Civ. No. 11858. First Dist., Div. Two. Oct. 24, 1941.]

ROBERT S. SMITH, Jr., et al., Appellants, v. MARVIN H. GROVE et al., Respondents.

458

Stanley J. Cook, Carroll Single and Harold C. Faulkner for Appellants.

H. O. Hepperle, Justin M. Jacobs and Orrick, Dahlquist, Neff & Herrington for Respondents.

STURTEVANT, J.—Claiming that a partnership existed between the plaintiffs, Robert S. Smith, Jr., and Rufus G. Thayer, and the defendant Marvin H. Grove, the plaintiffs commenced an action to obtain a decree of declaratory relief, the establishment of the existence of the partnership, for an accounting and other relief. The defendants answered. In their answer the defendants set forth many denials and many affirmative defenses. A trial was had before the court sitting without a jury. The court made findings in favor of the defendants and from the judgment entered thereon the plaintiffs have appealed.

For some time prior to the year 1929, Robert S. Smith, Jr., Rufus G. Thayer, and Marvin H. Grove were lieutenants in the navy and attached to Mare Island Navy Yard. While so acting the plaintiff Robert S. Smith, Jr., became interested in developing a regulating valve. The navy was in need of a more efficient and satisfactory valve than was then on the market. Later he developed a device which he thought had merit. Thereafter he consulted Rufus G. Thayer, the co-plaintiff, and the two of them worked together on the device. Still later they consulted with the defendant Marvin H. Grove. Shortly prior to October 30, 1930, both Lt. Smith and Lt. Thayer were ordered to report for sea duty. Before leaving Mare Island the parties executed a written instrument as follows:

"The parties to this agreement are Robert S. Smith, Rufus G. Thayer, and Marvin H. Grove.

"Our subject of consideration is a reducing valve, known as the 'Smith-Thayer Reducing Valve', for which a patent application has been filed. The inventors of this device are Robert S. Smith and Rufus G. Thayer. Our object is to manufacture and sell this reducing valve or to dispose of the contemplated patent rights or otherwise exploit this invention to best advantage.

"We, the undersigned, to our mutual interest and benefit subscribe to the following conditions and agreements. The inventors desire the services of the third party in managing, patenting, manufacturing, selling or otherwise disposing of the invention. In consideration for this service, and for past services of the third party in designing, refining, patenting, proving in service and exploiting the invention, we, the inventors, and the third party, do enter into partnership, each of the three parties to share equally with the others in any benefits to accrue from the invention.

"Robert S. Smith,
"Rufus G. Thayer,
"Marvin H. Grove."

In the trial court the plaintiffs introduced in evidence that writing, and a great deal of evidence explanatory thereof, and the circumstances surrounding its execution. They contended said written instrument and the evidence they had introduced showed a partnership of the three persons signing it. That contention was vigorously controverted by the defendant Lt. Grove. In view of the conclusions reached by us the solution of the controversy just mentioned is determinative of the action. However, before proceeding it becomes necessary to state additional facts to be found in the evidence.

The uncontradicted evidence is that the invention mentioned in said writing was invented by Lt. Smith; that through a mistake of law an application for a patent, No. 370,879, was filed June 14, 1929, in the names of Lt. Smith and Lt. Thayer; and that later, when they were informed of the mistake they had made, the said application was amended to make it an application solely by Lt. Smith. Said invention was the sole piece of property which was the subject of said instrument. There is not a particle of evidence that Lt. Smith ever assigned or agreed to assign any interest in the invention to either Lt. Thayer or to Lt. Grove. At the time said instru-

ment was written a single unit was being made in the Mare Island Navy Yard. It was generally called the Smith-Thayer Valve. The federal government furnished the labor and materials gratis. No one of the parties possessed any tools, materials, or any other properties which he contributed to the undertaking. No plan for the manufacture of the valve was ever adopted. Except as contained in said writing, nothing was ever agreed upon as to the payment of losses or expenses, or by whom they were to be paid. There were conversations relative to obtaining financial backing for the purpose of exploiting the invention but if such backing was obtained the exact nature of the contract to be made with the backer was left for future determination. It is clear that the parties contemplated that Lt. Grove would endeavor to negotiate a contract to dispose of rights to use the invention but the terms of that contract were never settled. It is also clear that Lt. Thayer expected to interest Mr. Jackling as a backer but there was no evidence that he ever succeeded in doing so. There was evidence that in attempting to interest backers Lt. Grove incurred expenses, but at no time did he claim Lt. Smith and Lt. Thayer were obligated to share in the payment, nor did they ever offer to do so. Lt. Grove devoted much time and effort looking toward the improvement of the device and incurred considerable expense in doing so. That expense he did not ask the plaintiffs to pay in part, nor did they offer to do so. Neither Lt. Smith nor Lt. Thayer ever contributed any sum whatever. After the above written instrument was executed a power of attorney to Lt. Grove was executed by the two plaintiffs. Later a second power was executed to him. All of the written instruments show a claim of title to the invention in behalf of the two plaintiffs. Each power of attorney expressly reserved the right in the plaintiffs to assign it.

The first power of attorney was acknowledged by Lt. Smith on February 2, 1931, in San Diego. It was acknowledged by Lt. Thayer on February 4, 1931, in Los Angeles. In paragraph seven it was provided: "Nothing in this power of attorney shall be construed as a power or authority to sell, assign, transfer or otherwise dispose of the patent rights in and to the device known as the Smith-Thayer regulating valve if and when the patent to the aforesaid device is granted, nor to sell, assign, transfer or otherwise dispose of the rights in

and to the application for a patent to the aforesaid device.'' On the same date the plaintiffs wrote to Lt. Grove a joint letter regarding the power of attorney. In that letter they said: ''As to paragraph six the intent is to preserve the patent rights *intact to us*. Arrangements may be made under this provision for participation in profits or for leasing the rights, but the title shall *remain in our name*.'' (Italics ours.)

The plaintiffs call to our attention the use of the word ''partnership'' in the instrument written October 30, 1930, and to the same word used in the letter from which we have just quoted, and they argue earnestly that therefore the said instrument constituted a partnership agreement. We may not so hold. The trial court made a finding directly to the contrary. We are not at liberty to disturb that finding even though we disagreed with the trial court. (6 Cal. Jur. 329.) But we do not disagree with the trial court. The nature of the instrument is not to be determined by what the parties called it. (*Kloke* v. *Pongratz*, 38 Cal. App. (2d) 395, 402 [101 Pac. (2d) 522].) Its nature is to be determined by its legal effect. The legal effect of an instrument claimed to be a contract of partnership must be measured by the rules of law applicable thereto. The first rule is statutory. A partnership is '' . . . an association of two or more persons to carry on as co-owners a business for profit.'' (Civ. Code, sec. 2400.) The rule was at an early date adopted from the common law and has since been followed in this state. (*Wheeler* v. *Farmer*, 38 Cal. 203, 213; *Dempsey-Kearns Theatrical & Motion Picture Enterprises* v. *Pantages*, 91 Cal. App. 677, 682 [267 Pac. 550].) But in the case before us Lt. Smith was the sole owner and never assigned nor agreed to assign to Lt. Thayer nor Lt. Grove any part of his interest. Another rule is that a partnership agreement between the parties must provide for the sharing of the profits and losses, or what is the same thing, of sharing the net profits. (Secs. 20 and 21, Story on Partnership.) But the agreement made by the parties to this action imposed solely on Lt. Grove the burden of bearing all expenses. Such were the facts in the case cited above (*Wheeler* v. *Farmer, supra*), and it was there held that the parties created the relation of principal and agent and not that of a copartnership. Finally, to constitute a

partnership relation, in the agreement "there must be such community of interest as empowers each party to make contracts, incur liabilities, manage the whole business—a right which upon the dissolution of the partnership passes to the survivor and not to the representatives of the 'deceased. . . . The association must be one for the purpose of jointly carrying on the business." (*Oscar Krenz C. & B. Wks., Inc.,* v. *England,* 109 Cal. App. 747, 752 [293 Pac. 689].) See, also, *Auditorium Co.* v. *Barsotti,* 40 Cal. App. 592, 595–596 [181 Pac. 413], and cases there cited. The foregoing rules seem to obtain generally. (*H. H. Worden Co.* v. *Beals,* 120 Ore. 66 [250 Pac. 375].) ▮▮▮ But the agreement in the instant case purported to impose on Lt. Grove not only the duty of perfecting the valve but of negotiating sales of rights to the use thereof. It follows, therefore, that the agreement between the plaintiffs and the defendant, Lt. Grove, did not create a partnership relation between them.

▮▮ During the trial plaintiffs contended that the defendant, Lt. Grove, had converted the invention of Lt. Smith to his own use and should account therefor. Lt. Grove vigorously denied that charge and called expert witnesses to sustain him. The trial court made findings on that issue in favor of the defendants. We may not disturb those findings. They were based on a mass of evidence, including that of the experts just mentioned, and on many other facts, including among others the following. About October 30, 1930, Lt. Grove was in such poor health that it was necessary for him to take a leave of absence or apply for a discharge. However, both prior and subsequent to the date above mentioned, he worked most earnestly with the plaintiffs in an attempt to perfect the device invented by Lt. Smith. At first he continued to work in the shops at Mare Island Navy Yard and later in other shops. The device had such good points that many became interested in it and tried it out. Several models were made. However, no single model was entirely satisfactory. The defects were such that all the parties to this litigation were convinced that the objections were well founded. Lt. Grove continued to try. Finally, in the absence of both plaintiffs, without any assistance from either of them, he prepared a device. Being informed that the patent rights to the so-called Fry invention might be infringed upon he personally purchased the patent rights to that in-

vention for the sum of $900. Thereafter he applied for letters patent and in due time a patent was issued to him, No. 2,047,101. It is the claim of the plaintiffs that the device so patented is the device invented by Lt. Smith, having merely immaterial changes made therein. Obviously that contention presents questions of mechanics on which no court is presumptively informed. The defendants called as a witness Dr. Fuller, an executive head in the department of engineering at the University of California. Having examined the Lt. Smith invention and the one invented by Lt. Grove, he testified: ''Q. Phrasing it still differently, Doctor, will you tell the court whether the operating principle of the Smith-Thayer is the same in the Grove valve or whether they are radically different? A. The operating principle is radically different. . . . Q. Except for that which is covered by prior art, Doctor, what if anything is there in the Smith-Thayer valve that is present as a principle in the Grove valve as shown in Defendants' Exhibit No. 67? A. In my opinion absolutely nothing.'' Mr. Flehr, a graduate engineer and patent attorney of years of experience, was also called as a witness by the defendants. He gave testimony corroborating Dr. Fuller. Under these circumstances we think it is clear there was evidence in the record showing that the device patented by Lt. Grove was not the one invented by Lt. Smith.

In view of the conclusions just expressed, it follows the judgment appealed from should be and it is affirmed.

Nourse, P. J., and Spence, J., concurred.