[Civ. No. 4526. Fourth Dist. June 26, 1953.]

LEE SINGLETON, Respondent, v. ROBERT L. FULLER et al., Defendants; NOEL TWEED, Appellant.

Bertrand L. Comparet for Appellant.

McInnis & Hamilton and John W. McInnis for Respondent.

GRIFFIN, J.—Plaintiff and respondent brought this action against defendants Robert L. Fuller and Noel Tweed, alleging in the first cause of action that about July 1, 1948, an account was stated between plaintiff and defendants in the sum of

$2,702.17. In a second cause of action it is alleged that defendants became indebted to plaintiff for goods, wares, and merchandise furnished by plaintiff to defendants in a like amount.

Appellant Tweed, by separate answer, denied generally the allegations of the complaint and the case proceeded to trial against him.

The court found generally that defendant Fuller and appellant Tweed were, prior to December 5, 1946, associated together in a business venture, for the purpose of purchasing, remodeling, and selling barracks, and that their relationship to each other was that of general partners; that they were in fact a partnership for this venture, which was terminated about August, 1948; that in January, 1947, at the special request of Fuller, acting for said venture and partnership of Fuller and Tweed, and with appellant Tweed's full knowledge, plaintiff did commence to and continued to furnish labor and materials upon the buildings at a cost totaling $2,702.17; that appellant Tweed ratified all of the acts of his partner in the manner of conducting the business venture and in procuring the labor and materials furnished for said buildings; that in August, 1948, a count was stated between plaintiff and defendants, as a partnership, in said sum; that no part of that amount was paid and that it is due and owing. Judgment was entered against appellant accordingly.

The complaint on this appeal is that there is insufficient evidence to show an account stated or to support the finding of a partnership relationship.

Although the evidence is conflicting, it shows that plaintiff was a painting contractor; that appellant Tweed and others were in the planing mill and building material business as a partnership; that defendant Fuller, on December 5, 1946, entered into a written agreement with the Ed Fletcher Company, agreeing to purchase from it a number of wooden barracks buildings which were to be remodeled into residences and ultimately removed to lots obtained by purchasers. Fuller agreed to pay $21,000 for these barracks with a down payment of $4,000.

Fuller, in testifying as a witness for plaintiff under section 2055 of the Code of Civil Procedure, stated that he and appellant Tweed discussed this proposition of remodeling and selling these barracks, and about going "into this business of getting barracks and repainting and repairing and selling them"; that Fuller told Tweed he was without sufficient funds

to finance the project; that Tweed agreed to assist him in this respect but Tweed insisted that the agreement between him and Fuller be drawn by his attorney, and he wanted it so drawn that "it would not show that it was legally a partnership, because of his business with the Walter & Tweed's Planing Mill, but it would be a partnership"; that they had the agreement written that way to please Tweed.

The written agreement between them recites that Fuller, on the 3d day of December, entered into an agreement with the Ed Fletcher Company as above indicated; that Fuller was in need of financial assistance in the sum of $4,000 to carry out its provisions; that Tweed agreed to furnish that sum and Fuller agreed to pay Tweed $6,250 "from the proceeds of the sale of said barracks in twenty-four (24) equal installments of two hundred sixty and 42/100 dollars ($260.42) each" payable within five days after the sale by Fuller of the seventh of said barracks buildings, and a like sum for each building thereafter sold up to 30. It then provided that in the event Fuller defaulted in his agreement to purchase said barracks from the Ed Fletcher Company or "for any reason is unable to carry out his agreement, Fuller agrees to assign all his rights of every nature in and to the said agreement with the Ed Fletcher Company to Noel Tweed."

Fuller then testified that appellant paid the $4,000 to him and he in turn paid the Ed Fletcher Company that amount in accordance with his contract; that he informed plaintiff that he and Tweed were "going to do this operation or do this business"; that he employed plaintiff and others in proceeding with the remodeling program; that many bills were contracted with different workmen; that things did not go "just the way we expected at the beginning and the barracks were not selling as we figured"; that he went over certain outstanding bills with appellant and discussed them with him such as plaintiff Singleton's bill for work he had done; that the payments to the Fletcher Company were in default, and appellant agreed to and did "put in" an additional $2,000 to pay off some of the bills with the understanding he was "to get $240 a house." However, Fuller signed an agreement to repay the $2,000, plus interest at 1 per cent per month, and to execute a chattel mortgage on certain property as security. (Apparently that mortgage was never executed.) A few of the barracks were sold. Appellant visited the property often and even went out on occasions to assist in selling them and

did, in fact, negotiate the sale of one such remodeled barracks. Fuller also testified that one of the barracks was removed to a lot owned by Fuller's father; that the money obtained from that sale was used to complete that barracks with the preconceived plan of selling it and paying off the indebtedness due to plaintiff and the Helix Electric Company, to whom they owed money; that a meeting of all of the creditors and parties concerned was called to discuss their plans; that although plaintiff did not appear at the meeting he authorized them to make such disposition of his claim as was agreed upon at the meeting in reference to the others; that shorthand notes were taken of the several conversations; that appellant stated to those present that he and Fuller "were partners in this venture; that the reason there was no partnership papers made out was because of his agreement with his other partners at the lumber mill"; that he was asked what he proposed to do about the outstanding obligations to prevent liens being placed on the property and he stated: "We intend to move the buildings and sell them, then we can pay off the defendants, but we are not going to pay off the debts until we sell these buildings"; that one creditor asked for written security and appellant replied: "There need be nothing in writing, because I personally will see that these partnership debts are paid when the buildings are sold"; that he communicated that fact to plaintiff Singleton and told him that satisfactory arrangements had been made to carry the indebtedness over from one job to another and that he would be paid when a little more work was done; that plaintiff handed over a written release of his mechanics' liens to appellant; that thereafter he continued working and painting the buildings; that appellant then started paying the bills from his own bank account and deposited therein money from sales subsequently made; that Fuller, by agreement with Tweed, continued to work on the barracks moved to his father's lot and Tweed paid his grocery bills, etc., while so doing; that Singleton also worked thereon; that he and appellant went to the Fletcher Company and that company agreed to cancel the contract insofar as it affected the barracks remaining on its property; that appellant took over "running affairs" thereafter; that the barracks on one-half of the father's property were financed through appellant's bank account, completed and sold for approximately $11,500, and that a carpenter shop was financed and built on the other one-half of

the lot, which shop was partially financed by Mr. Fuller and was later deeded back to him by Tweed. Excepting for plaintiff, most of the other creditors were paid by appellant.

Appellant's testimony is that originally Fuller asked him for a loan of $4,000 to obtain the right to remodel the barracks; that he required the agreement for the loan signed by them on December 5, 1946, to be in writing; that he then paid Fuller the money; that the agreement with Fletcher was signed the same day; that about January 8, 1947, Fuller came to him for more money and he loaned it to him as indicated by the written agreement; that Fuller never repaid any of this amount; that Fuller did report some sales to him and told him all bills had been paid; that Fuller requested him to go to the Fletcher Company and help him in securing a cancellation of the agreement; that he went but said nothing; that he discovered one of the buildings had been removed to the Fuller lot and he demanded some security for his $6,000 loan; that he bought the one-half acre lot only with the idea of obtaining some security for his indebtedness and to remodel the barracks and sell them so he could be repaid. He admitted going to the Fletcher Hills site and assisting in the sale of the property, but claimed it was only to help Fuller so appellant could be reimbursed for the money he loaned. He studiously maintained that at no time was there any partnership or joint venture agreed upon; that the writing was the only agreement made; that all evidence received at the trial in contravention of the intentions expressed in the written agreement was incompetent and inadmissible. He admitted that a meeting was had of some of the creditors and parties concerned but denied making any of the statements attributed to him by Fuller wherein he was supposed to have admitted that a partnership did exist between them and that he agreed to see that the creditors would be paid if they released their liens. He admitted taking over operations after that day and using his own bank account and that he received and paid out money in furtherance of his efforts to pay the claims and to secure the return of his investment. However, he contends that by reason of the loan, the sale of the properties, the payment of $4,700 for support of Fuller's family, and by the entire venture, he stands to lose over $2,000, not including the judgment herein rendered.

The shorthand reporter read from her notes taken at the meeting of the creditors and it shows that someone asked

appellant about the partnership and he "made the statement that he could not make partnership papers due to the fact that he was already in partnership at the mill and had promised not to do so," and that "if the men involved would give their releases that he would guarantee that they would all get their money." Appellant admitted that plaintiff called him on the phone just before the meeting and told him he could not be there and to go ahead even in his absence. Many cancelled checks in payment of labor and material, issued by appellant after the date of this meeting and drawn on his bank account, were received in evidence as well as cancelled checks paid to Fuller and his wife from July 30, 1947, to March 9, 1948, for claimed living expenses. Appellant, on the witness stand, admitted that some of this money, however, did go into the cost of remodeling the barracks on the Fuller property.

Plaintiff fully established that labor and materials were furnished by him on the premises involved and in the sum indicated. Some portion of it, approximately $145, was after the so-called creditors' meeting. Plaintiff rendered Fuller the statements of account as they became due and no objection was ever made as to their nature or the amount claimed. Fuller testified he received them; that "he went over the bills with Mr. Tweed, certain bills, I couldn't say for sure that those were the bills that were there." The question as to whether there was an account stated as between plaintiff and appellant becomes unimportant if the judgment can be sustained on the theory of a partnership venture. (*Nunneley* v. *Edgar Hotel,* 36 Cal.2d 493, 500 [225 P.2d 497]; *Wells* v. *Brown,* 97 Cal.App.2d 361 [217 P.2d 995].)

It is appellant's position in this respect that all prior negotiations between plaintiff and appellant were merged in their written agreement; that by its terms their relationship was that of debtor and creditor; that thereunder appellant was given no right or title to share in the business profits, no right of management or control, and subjected Tweed to no liability for debts or losses; that the sum he was to receive was fixed and was payable out of the gross receipts and not from profits; that there was no intent between the parties to form a partnership; and that the Uniform Partnership Act makes the test of partnership the same, whether the action be one between the supposed partners or between a third party creditor and the supposed partners; that all of these elements must exist if the relation of partnership exists, citing such

cases as *Auditorium Co.* v. *Barsotti,* 40 Cal.App. 592, 596 [181 P. 413]; *Spier* v. *Lang,* 4 Cal.2d 711 [53 P.2d 138]; *Smith* v. *Grove,* 47 Cal.App.2d 456, 461 [118 P.2d 324]; Corporations Code, sec. 15001 et seq.; *Martin* v. *Peyton,* 246 N.Y. 213 [158 N.E. 77]; *Farris* v. *Farris Engineering Corp.,* 7 N.J. 487 [81 A.2d 731, 738-739].

 In *San Joaquin Light & Power Corp.* v. *Costaloupes,* 96 Cal.App. 322, 334 [274 P. 84], it was said:

"The courts will not countenance contrivances for giving persons the whole of the advantage of a partnership, without subjecting them to the liabilities, and an agreement which attempts to carry out a joint venture for the mutual profit of the adventurers and evade their responsibility for losses may be enforced and construed as creating a partnership."

█ It has been held that an express stipulation under written articles of agreement to the effect that the relationship is not one of partnership is of no value, if such is the actual nature of the business. (*Streeter & Riddell, Inc.* v. *Bacon,* 49 Cal.App. 327 [193 P. 285].)

█ In *Associated Piping & Engineering Co.* v. *Jones,* 17 Cal.App.2d 107 [61 P.2d 536], an attempt was made by defendant to claim a debtor-creditor relationship, rather than a partnership which the court found to be the fact. The court there said:

"We are of the opinion that, notwithstanding the provisions of the contract under which appellant 'agrees to loan to the parties of the second part, from time to time, various sums of money, he was in fact a member of the partnership. . . . We may concede that a relationship of debtor and creditor is shown, and also that the contract expressly declares that appellant 'agrees to loan' various sums of money to the other parties. However, this does not establish the fact that the parties did not intend to create a partnership between themselves or as to a third person. The parties did intend to create exactly the relationship as shown by the contract, but did not intend that relationship to be called that of partnership. . . . It is the intent to do the things which constitute a partnership that usually determines whether or not that relationship exists between the parties." (Citing cases.)

█ In determining whether a relationship such as that of partners has been created, the courts are guided not only by the spoken or written words of the contracting parties, but also by their acts. (*San Francisco Iron & Metal Co.* v. *American Milling & Ind. Co.,* 115 Cal.App. 238 [1 P.2d

1008].) ■ The fact that no complete control of any part of a partnership venture is vested in each partner does not negative the existence of a partnership since, by agreement, one partner may be given the duty of management of the enterprise or any part thereof. (*Lyon* v. *MacQuarrie*, 46 Cal.App.2d 119 [115 P.2d 594].) ■ The fact that the agreement between them is that only one party may share in the gross receipts does not necessarily negative the existence of a partnership. (*De Rigne* v. *Hart*, 94 Cal.App. 209 [270 P. 1013].) ■ It is true that payments made from profits of the business do not constitute the parties partners where the relationship of debtor and creditor exists and such payment is in discharge of a debt. ■ Whether an agreement to share profits is merely to provide a measure for compensation of services or for use of money, or whether it extends beyond and bestows ownership and interest in the profits themselves so as to constitute the undertaking a partnership or joint adventure, presents primarily a question of fact. (*Nelson* v. *Abraham*, 29 Cal.2d 745 [177 P.2d 931].) ■ Although a partnership generally contemplates an equal sharing of profits and losses in the prosecution of a common purpose, the division may be left to agreement of the parties. (*Constans* v. *Ross*, 106 Cal.App.2d 381 [235 P.2d 113].)

■ Here the trial court was authorized to believe the evidence most favorable to plaintiff and from that evidence it appears that Fuller and appellant became mutually interested in purchasing, remodeling and selling the barracks as a joint enterprise or on a partnership basis; that appellant did not desire that it appear that he and Fuller were so operating and accordingly made it appear that the interest of appellant was only in loaning the money to Fuller, with the obligation of repayment of the principal, together with interest, being the only objective. The face of the instrument executed by them might so indicate. However, the prior and subsequent actions and conduct of appellant might well indicate that the trial court's finding was correct and that there was a secret intention between the parties that a partnership would be effected. This conclusion is fortified by the testimony of Fuller and the statements of appellant at the creditors' meeting. There is evidence that the true intention of the parties as to the existence of a partnership between Fuller and appellant was communicated to plaintiff at the time of his employment. Section 15009 of the Corporations Code provides in part that ''Every partner is an agent of the part-

nership for the purpose of its business, . . ." It is true that the agreement provides for the repayment of $6,250 in consideration for the claimed loan of $4,000, and that said sum should be repaid in 24 equal installments "from the proceeds of the sale of such barracks . . . until all of said barracks are sold." It then provides for a compulsory assignment to appellant of all of Fuller's rights in and to the Fletcher agreement in case of default in any of its terms.

It therefore appears from the agreement between Fuller and appellant that more than the legal interest allowed is reflected in these arrangements and might well result in a division of the profits or in case of a failure to make a profit, an assumption of a loss by reason of the fact that the sums advanced were to be repaid only from the profits of the sale for, if there were no sales made there would naturally be no profits to pay the obligation. It does appear that on occasions appellant's interest in the business did appear to be more than that of a creditor. He examined the bills, habitually visited the property, assisted in the sales, and actually effected a sale of one of the barracks. At the meeting of the creditors he agreed to pay their claims if they would release their liens, which they did do, and most of the creditors were paid by appellant. It appears that appellant heavily financed Fuller by way of paying for the maintenance and support of his family and in sharing the proceeds of the project with him by these means.

There is sufficient evidence to support the court's finding as to the formation of a partnership. In addition, in support of the judgment, it appears that appellant subsequently agreed to guarantee and assume, for a consideration, the obligations of Fuller and the partnership in carrying out the enterprise to its ultimate conclusion. This court was presented with a somewhat similar question in *Parrish* v. *Greco, ante,* p. 556 [258 P.2d 566], decided June 18, 1953, in which it was contended that an agreement to answer for the debt, default or miscarriage of another must be in writing. There the exception to the rule set forth in Civil Code, section 2794, was applied, that is, "A promise to answer for the obligation of another, in any of the following cases, is deemed an original obligation of the promisor, and need not be in writing: . . . 2. Where the creditor parts with value, or enters into an obligation, in consideration of the obligation in respect to which the promise is made, in terms or under circumstances such as to render the party making the promise the principal

debtor and the person in whose behalf it is made, his surety.'' The judgment in the amount indicated is sustained by the evidence.

One other more technical claim is presented. It is argued that there was a fatal variance between the pleadings and proof because, under the common count for ''*goods, wares and merchandise*'' furnished, it appears that the portion of the amount allowed included labor to the extent of $1781.90. He cites *Cannon* v. *McKenzie*, 3 Cal.App. 286 [85 P. 130], and *Ward* v. *Stimson*, 50 Cal.App. 336 [195 P. 67].

Apparently, no objection was made to the admission in evidence of the testimony relating to the services performed by plaintiff, nor to the copies of statements rendered to Fuller by him. No point was raised at the trial in relation to any claimed variance between the pleading and the proof, at which time the court might well have allowed an amendment to conform to the proof. No such point may now be raised for the first time on appeal, particularly where the case was fully and fairly tried on its merits as though no such claimed variance existed. (*Grossetti* v. *Sweasey*, 176 Cal. 793 [169 P. 687] ; *Chelini* v. *Nieri*, 32 Cal.2d 480 [196 P.2d 915] ; *Gaffny* v. *Michaels*, 73 Cal.App. 151 [238 P. 746] ; *Gwinn* v. *Goldman*, 57 Cal.App.2d 393 [134 P.2d 915].)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied July 23, 1953, and appellant's petition for a hearing by the Supreme Court was denied August 20, 1953.