[Civ. No. 6504. Fourth Dist. Apr. 13, 1961.]

HARRY MOULIN et al., Appellants, v. ARAM G. DER ZAKARIAN, Respondent.

Action for money had and received. Judgment for defendant affirmed.

Lawrence W. Young and Robert L. Young for Appellants.

Peckinpah & Hamlin and Charles F. Hamlin for Respondent.

GRIFFIN, P. J.—Plaintiffs-appellants, Harry Moulin and Roxana Giragossiantz, brought this action for money had and received against defendant-respondent Aram G. Der Zakarian, each seeking a judgment for $5,000 based on a certain written agreement.[1]

The primary question at the trial and on this appeal, as set forth in the pretrial conference order, is whether the

---

[1]PARTNERSHIP AGREEMENT

THIS AGREEMENT, made this 4th day of January, 1957, in Fresno, California, between ALBERT CARPENTER, HAIG HOVSEBIAN, VAHAN NAJARIAN, CHARLES G. BALOIAN, ROXANA GIRAGOSSIANTZ, HARRY MOULIN, MARIE KONJOYAN, ISABEL KONJOYAN and LUTHER SIMONIAN (hereinafter called ''First Parties'') and ARAM G. DER ZAKARIAN (hereinafter called ''Second Party'').

1. The parties do hereby form a partnership to trade under the name of MAYFAIR PARTNERSHIP in commodities and commodity futures on an investment and speculative basis. . . .

.    .    .    .    .    .    .    .    .    .    .    .    .

3. (a) The original capital of the partnership shall be contributed in cash by the partners [naming them and specifying the amount paid by each].

(b) In addition to the cash contribution to be made by Second Party, he shall contribute at his expense such time, research, management and office facilities (but not trading expense) as may be necessary to planning and making trades and conducting efficiently the business of the partnership. It is understood in this connection that no part of the con-

payments made under the so-called partnership agreement constituted investments in a security which could not be lawfully sold by the defendant without a permit from the Commissioner of Corporations of this state. (Citing such authority as Corporations Code, section 25008, providing that a security shall include, among other things, any stock, any certificate of interest or participation, any certificate of interest in a profit-sharing agreement, any transferable share, investment contract, or beneficial interest in title to property,

tributed capital shall be used for any such purpose mentioned in this subparagraph, but will instead be used only to finance the trading in commodities and commodity futures.

(c) No additional contributions to capital shall be required of any partner and no additional contributions to capital shall have the effect of changing the basis of sharing profits hereunder, unless such additional contribution shall have been made with the consent and approval of all partners.

4. The net profits of the partnership shall be divided forty-seven and five-tenths percent (47.5%) to First Parties and fifty-two and five-tenths percent (52.5%) to Second Party. The share of the profits belonging to First Parties shall be divided among them in proportion to their respective contributions to partnership capital. The net losses of the partnership shall be charged first to the partnership capital and any margin calls on investments in excess thereof shall be advanced solely by Second Party and any partnership losses in excess of the partnership capital shall be borne solely by Second Party.

5. The partnership shall maintian a partnership bank account . . . All contributions to capital by the partners, as well as profits on closed partnership transactions, shall be deposited therein. Except in case of dissolution or termination by reason of the death of Second Party, only Second Party shall be authorized to draw checks on the partnership bank account. In case of the death of Second Party, CHARLES G. BALOIAN, one of the First Parties, shall also be authorized to make withdrawals from or deposits to said bank account.

6. This partnership shall have no right, title or interest in or to any other business or transaction in which any party hereto may be engaged, it being expressly recognized that each of the partners is, and will continue to be, engaged in business other than for the partnership, and that Second Party will, during the term hereof, be trading in like commodities and commodity futures for his own account and for the account of other partnerships in which he may be or become a partner.

7. (a) Because of the nature of the business of the partnership, Second Party is expressly authorized to exercise his sole and complete discretion in determining the trades to be made for the partnership and is hereby expressly authorized to give orders or complete trades on behalf of the partnership. He will, however, to the extent practicable under the circumstances, confer with First Parties before completing partnership transactions. As often as First Parties request, Second Party will also make a written report to each of First Parties, showing (a) partnership profit or loss in trades closed during the month, and (b) the resulting balance of partnership funds on hand at the end of each such calendar month. In addition, each partner shall have the right at any time to examine the books and records of the partnership at its principal office. Complete financial statements shall be rendered and audits shall be made of the partnership books not less frequently than once each year;

profits or earnings; and section 26100 thereof, requiring a permit; and section 25003 thereof providing that the act applies to individuals selling, offering for sale, or taking subscriptions for, any security of their own issue.) Also cited are *Smith* v. *Grove*, 47 Cal.App.2d 456, 461 [118 P.2d 324]; *People* v. *Woolson*, 181 Cal.App.2d 657, 669 [5 Cal.Rptr. 766]; *Oil Lease Service, Inc.* v. *Stephenson*, 162 Cal.App.2d 100, 109 [327 P.2d 628]; *People* v. *Syde*, 37 Cal.2d 765 [235 P.2d 601]; *Austin* v. *Hallmark Oil Co.*, 21 Cal.2d 718, 727

(c) when and if required, First Parties, and each of them, will execute an appropriate power of attorney and such other documents as may be reasonably required to permit Second Party to effect purchases and make sales and otherwise trade in commodities on an investment and speculative basis.

8. All charges and commissions of brokers, warehousemen, carriers and insurers and any other trading expenses incident to each partnership trade or transaction in which it is interested shall be partnership expenses. . . .

9. Partnership profits and losses shall be computed on a calendar year basis. Partnership net profits will be distributed to the partners from time to time in accordance with paragraph 4 hereof to the extent of eighty percent (80%) of net profits on closed transactions, less the amount, if any, by which net open losses exceed net open gains at the time of such distribution.

10. No partner shall on behalf of the partnership, without the consent of the other partners, endorse any note, or act as an accommodation party, or otherwise become surety for any person. Except as such action may be required as an ordinary incident of conducting the partnership business, no partner shall on behalf of the partnership borrow or lend money, or make, deliver or accept any commercial paper, or execute any mortgage, bond or lease, or purchase or contract to purchase, or sell or contract to sell any property for or of the partnership other than the type of property bought and sold in the regular course of its business. No partner shall assign, mortgage or sell his share in the partnership or in its capital assets or property, or enter into any agreement as a result of which any person shall become interested with him in the partnership . . .

11. (a) This partnership may be terminated by any partner at any time on thirty (30) days' advance written notice to the other partners. In addition, the partnership will terminate upon the death of any partner.

(b) In the event of termination due to any cause other than Second Party's death, the surviving partners will have the right at any time within forty-eight (48) hours after receipt of notice of death of one of First Parties, to elect to purchase the interest of the deceased or terminating partner or partners in partnership assets. . . .

(c) In the event of termination of this partnership by reason of the death of Second Party, all the partners hereby mutually agree upon and irrevocably appoint CHARLES G. BALOIAN, one of the surviving partners, ROBERT KONJOYAN and ROBERT NORMART, as a committee with authority to close all open transactions in which this partnership is interested. Said committee shall proceed expeditiously with the liquidation of all open trades and other partnership assets and shall distribute the proceeds thereof to the partners or the personal representatives of any deceased partner, first in repayment of capital contributions and the remainder as profits in accordance with paragraph 4 hereof.

[134 P.2d 777] ; *Domestic & Foreign Petr. Co., Ltd.* v. *Long,* 4 Cal.2d 547, 557 [51 P.2d 73] ; *People* v. *Hoshor,* 92 Cal. App.2d 250 [206 P.2d 882].

Defendant's position is that the instrument speaks for itself; that it is clearly intended to be, and was, a general partnership, as designated therein; that the contributions constituted contributions to the capital of the partnership; that no interests therein were sold or offered to the public; that such partnership was exempt from the requirements of the provisions of the Corporate Securities Law; and that no permit was required in connection with such contributions. Citing Corporations Code, section 25100, which reads:

"Except as otherwise expressly provided in this division, the Corporate Securities Law does not apply to any of the following classes of securities:

. . . . . . . . . . . . . .

"(*l*) Any partnership interest in a general partnership, or in a limited partnership where certificates are executed, filed, and recorded as provided by Sections 15502 and 15525 of the Corporations Code of the State of California, except partnership interests when offered to the public.

"(m) Any bona fide joint adventure interest, except such interests when offered to the public."

After hearing testimony and interpreting the agreement, the court found generally in favor of defendant and against plaintiffs' contentions. It specifically found that, by virtue of the agreement here under consideration, a bona fide general partnership was formed as authorized by the laws of this state; that defendant at no time ever solicited, by advertising or otherwise, plaintiffs, or either of them, or any of the other parties to said partnership, to enter into said agreement, nor did he ever, in any manner whatsoever, offer to the public an interest in the partnership formed thereunder; that defendant at no time received from the Commissioner of Corporations a permit to enter into said agreement; and that it was not necessary for defendant to obtain such a permit on the part of the partnership or defendant in order to legally accept from plaintiffs contributions to the capital of the partnership formed under the agreement. Judgment was entered for defendant.

Plaintiffs claim that the instrument did not constitute a partnership regardless of its designation as a partnership agreement, since the sole power to manage the business and incur liabilities was in defendant and not in the other parties;

that there is no provision for the sharing of losses between the parties; that plaintiffs, in the event of loss, lose only their investment and any losses in excess of that amount are to be borne by defendant; that in the event of the death of defendant, the right of dissolution is not in the other parties to the agreement, but the power is given to a committee of three, two of whom are not parties to the agreement, and that there is not a community of interest between the parties and the agreement shows on its face that it is an investment contract. (Citing such authority as *O. Krenz C. & B. Works, Inc.* v. *England,* 109 Cal.App. 747, 752 [293 P. 689]; *Spier* v. *Lang,* 4 Cal.2d 711, 716 [53 P.2d 138].)

██ In *Smith* v. *Grove, supra,* 47 Cal.App.2d 456, 461, relied upon by plaintiffs as well as defendant, the court set forth certain rules applicable to the determination of a partnership and said:

"The legal effect of an instrument claimed to be a contract of partnership must be measured by the rules of law applicable thereto. The first rule is statutory. A partnership is '. . . an association of two or more persons to carry on as co-owners a business for profit.' . . . ██ Another rule is that a partnership agreement between the parties must provide for the sharing of the profits and losses, or what is the same thing, of sharing the net profits. . . . ██ Finally, to constitute a partnership relation, in the agreement 'there must be such community of interest as empowers each party to make contracts, incur liabilities, manage the whole business—— a right which upon the dissolution of the partnership passes to the survivor and not to the representatives of the deceased . . . . The association must be one for the purpose of jointly carrying on the business.' "

██ It fairly well appears from the instrument itself that the parties to the agreement were associated to carry on the business of trading in commodities for profit. They carried on the business as coowners because the evidence is uncontradicted that all trading was done in the partnership name. Thus, each partner had an interest in the commodities and commodity futures purchased because he or she owned a part of the partnership capital used to purchase the same. Paragraph 3(b) of the agreement provides that the contributed capital shall be used only to finance the trading in commodities and commodity futures. Similarly, paragraph 10 provides that no partner shall assign, mortgage or sell his share in the partnership or in its capital assets or property.

Moreover, paragraph 11 specifies the procedure for purchasing the interest of the deceased or terminating partner in partnership assets, including open trades or transactions. These provisions clearly establish that each of the partners was a coowner in carrying on the commodity trading. The agreement is unequivocal in stating the basis under which the partners were to share the net profits of the partnership. The fact that it limited the required contributions of the partners does not detract from the fact that the partners participated in profits and losses on a predetermined basis. The necessary community of interest in the control of the partnership affairs exists under the agreement by reason of the fact that the partners elected to recognize in the agreement circumstances requiring immediate and decisive action in a fluctuating market, and to give almost complete managerial powers to defendant as one of the partners. (*Lyon* v. *MacQuarrie*, 46 Cal.App.2d 119, 124 [115 P.2d 594]; *Associated Piping etc. Co., Ltd.* v. *Jones*, 17 Cal.App.2d 107, 111 [61 P.2d 536].) The other partners were not completely without control in that they could terminate the agreement and defendant's managerial powers on 30 days' written notice. The courts have recognized that the execution of an agreement relinquishing control is itself an exercise of the requisite right of control over the conduct of the partnership business. ▋ See *Dills* v. *Delira Corp.*, 145 Cal.App.2d 124, 132 [302 P.2d 397], where it is said:

"It is true that when persons jointly associated agree that management of the enterprise be entrusted to one of the group, there may nevertheless be a community of interest in view of the fact that the making of the agreement to relinquish control is itself an exercise of the requisite *right to control*." (Citing cases.)

▋ These same comments apply to plaintiffs' contention that there was no partnership under the agreement because all of the remaining partners did not succeed to the right to wind up the partnership affairs in case of the death of the defendant. Paragraph 11(c) of the agreement provides for a committee with authority to "close all open transactions in which this partnership is interested." These persons were not necessarily representatives of the deceased in case of his death during the life of the partnership. They were the agents or representatives of all of the surviving partners and plaintiffs can hardly complain that they were deprived of this right as surviving partners, since they appointed in

advance these agents or representatives, including one of their number, to handle the winding up of the business. The cases relied upon by plaintiffs can thus be differentiated from the agreement here under consideration, and in many of these cases the partnership interest was offered to the public or it was a limited partnership and certificates were not issued under Corporations Code, sections 15502-15525.

We conclude that the evidence and instrument under consideration fully support the finding that a general partnership was formed, and that no partnership interest was ever offered to the public. (*Campbell* v. *Degenther* (D. C., W. D. Pa., 1951), 97 F.Supp. 975.) Accordingly, Corporations Code, section 25100, subdivision (*l*), pertaining to exemptions, would apply.

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 6, 1961.