[No. B207421. Second Dist., Div. Two. Feb. 10, 2009.]

PATRICK MAN KEE KWOK et al., Plaintiffs and Appellants, v. TRANSNATION TITLE INSURANCE COMPANY, Defendant and Respondent.

## COUNSEL

Hallstrom, Klein & Ward, Grant J. Hallstrom and Betty J. Levine for Plaintiffs and Appellants.

Garrett & Tully, Robert Garrett, Ryan C. Squire and Zi Chao Lin for Defendant and Respondent.

## OPINION

**DOI TODD, J.**—Appellants Patrick Man Kee Kwok and his wife Maria Oi Yee Kwok appeal a grant of summary judgment in favor of respondent Transnation Title Insurance Company on appellants' complaint for breach of contract and bad faith denial of coverage on a title insurance policy. The trial court found that appellants did not succeed as insureds "by operation of law"

under the terms of the policy after transfer of the property from a wholly owned limited liability company, of which appellants were the only members, to appellants as trustees of a revocable family trust. We agree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2004, appellants formed Mary Bell, LLC (the LLC), and the LLC purchased real property located on Mary Bell Avenue in Los Angeles (the property). At all times, appellants were the only members of the LLC. At the time of the purchase, respondent issued a "CLTA Standard Coverage Policy of Title Insurance" (the policy), insuring title to the property and to an easement over a neighboring parcel. The LLC is the only named insured on schedule A of the policy. The policy defines "insured" as "the insured named in Schedule A, and, subject to any rights or defenses the Company would have had against the named insured, those who succeed to the interest of the named insured by operation of law as distinguished from purchase including, but not limited to, heirs, distributees, devisees, survivors, personal representatives, next of kin, or corporate or fiduciary successors." Paragraph 2(b) of the conditions and stipulations of the policy provides: "The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured or any transfer or conveyance of the estate or interest."

After appellants commenced construction of a single-family residence on the property, their neighbors refused to give them access to the easement for sewer and drainage, asserting that the easement was invalid. Construction was delayed by the easement dispute and not completed until after a downturn in the real estate market. When it became clear to appellants that the LLC would no longer be able to realize a profit on the sale of the property, they decided to move into the residence upon its completion and rent out their existing home until the real estate market improved.

On September 21, 2005, Mr. Kwok signed a grant deed, transferring the property from the LLC to himself and his wife "as trustees of the Patrick Man Kee Kwok and Maria Oi Yee Kwok Revocable Trust dated 3/12/1996." The grant deed was recorded on September 27, 2005, with a notation that no documentary transfer tax had been paid. On December 15, 2005, appellants'

accountant filed a "Limited Liability Company Certificate of Cancellation" with the California Secretary of State stating that the LLC had been dissolved by a vote of all members.

Appellants could not resolve the easement dispute with their neighbors and ultimately filed a lawsuit seeking to enforce their rights. They tendered a claim to respondent under the policy. The neighbors cross-complained against appellants, individually and as trustees, for quiet title and declaratory relief. Appellants tendered defense of the cross-complaint to respondent. The lawsuit between appellants and their neighbors eventually settled.

Respondent denied coverage under the policy on the grounds that the transfer of the property by the LLC to appellants as trustees was a voluntary act that did not arise by operation of law and therefore terminated coverage. The letter denying coverage noted that appellants had not availed themselves of an available endorsement for coverage after transfer of the property to a separate legal entity. Appellants then sued respondent for breach of contract and bad faith.

Respondent moved for summary judgment, focusing the motion on the timing of the decision to dissolve the LLC. Respondent argued that it owed no duty to appellants because the LLC voluntarily transferred the property to them by grant deed prior to the LLC's dissolution and therefore appellants did not become insureds by "operation of law" under the terms of the policy. Respondent proffered Mr. Kwok's deposition testimony that he decided to dissolve the LLC one or two months after the transfer of the property to himself and Ms. Kwok as trustees.

Appellants opposed summary judgment arguing that there was a triable issue of fact as to when the decision to dissolve the LLC had been made. They relied on Mr. Kwok's declaration that "[i]n September 2005 we decided to dissolve the LLC and distributed all of its assets, consisting of the Property, from our LLC to ourselves individually as trustees of our revocable inter vivos family trust and assume[d] any outstanding liabilities of the LLC." They also relied on Mr. Kwok's deposition testimony that had been "corrected" to state that he decided to dissolve the LLC one to two months before the certificate of cancellation was filed; his unchanged deposition testimony to the same effect; and a declaration from their accountant, stating that "[o]n or about mid-September 2005, I met with Patrick Man Kee Kwok and during this meeting Patrick informed me that they had decided to dissolve Mary Bell, LLC."

The trial court granted the motion for summary judgment, finding that appellants did not succeed to the interest of the LLC by operation of law because the undisputed evidence showed that the property was transferred by grant deed in September 2005 and that the LLC was not dissolved until December 2005. Rejecting Mr. Kwok's "dramatic reversal" in his corrected deposition testimony, the court concluded that appellants had failed to meet their burden of establishing a triable issue of material fact as to when the LLC was dissolved.

Appellants' motion for a new trial was denied and this appeal followed.

## DISCUSSION

### I. Standard of Review

Summary judgment is granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) This court reviews de novo the trial court's decision to grant summary judgment and is not bound by the trial court's stated reasons or rationales. (*Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 805 [85 Cal.Rptr.2d 459].) Here, we consider the purely legal question of whether coverage under the policy was terminated by the named insured's transfer of the property.

### II. Transfer of the Property to Appellants as Trustees Terminated Coverage Under the Policy

■ It is undisputed that the LLC is the only named insured on schedule A of the policy and that appellants did not obtain an endorsement adding their revocable family trust as an insured. Appellants contend that they became insureds "by operation of law" because they succeeded to the LLC's interest in the property upon their decision to dissolve the LLC. We find coverage did not continue because title to the property did not devolve to appellants as members of the LLC on dissolution of the LLC, but rather was transferred by deed from the named insured to appellants as trustees of their family trust, a totally separate legal entity.

#### A. Dissolution of the LLC

■ Corporations Code sections 17350 to 17357 address the dissolution of limited liability companies. Pursuant to section 17350, subdivision (b), a

"limited liability company shall be dissolved and its affairs shall be wound up upon [¶] . . . [¶] . . . the vote of a majority in interest of the members . . . ." The dissolved company nevertheless "continues to exist for the purpose of winding up its affairs, prosecuting and defending actions by or against it in order to collect and discharge obligations, disposing of and conveying its property, and collecting and dividing its assets." (Corp. Code, § 17354, subd. (a).) After all known debts and liabilities of the company have been paid or adequately provided for, any remaining assets are distributed among the members according to their respective rights and preferences. (Corp. Code, § 17353, subd. (a).) A certificate of cancellation of the company may then be filed with the Secretary of State. (Corp. Code, § 17356, subd. (b)(1).) Causes of action against a dissolved limited liability company, whether arising before or after dissolution of the company, may be enforced against members of the company to the extent of the company's assets distributed to them upon dissolution of the company. (Corp. Code, § 17355, subd. (a)(1)(B).) "Every limited liability company shall survive and continue to exist indefinitely for the purpose of being sued in any quiet title action." (Corp. Code, § 17355, subd. (c).)

Appellants argue that based on this statutory framework, the property was transferred to them upon their decision to dissolve the LLC in September 2005. In other words, the LLC was dissolved as soon as they voted to dissolve it and its only asset—the property—was transferred to them automatically "by operation of law" after they assumed the debts of the LLC. They argue that the grant deed had no effect on the transfer but was merely a means to put the public on notice that they now held title to the property as trustees.

Appellants support their argument by analogy to Corporations Code section 2004, which applies to the transfer of assets on the dissolution of a corporation.[1] (See *Fantasy, Inc. v. Fogerty* (N.D.Cal. 1987) 664 F.Supp. 1345, 1356 ["The transfer of assets from a dissolving corporation to its shareholders is a transfer by operation of law."]; *Brodie v. Barnes* (1942) 56 Cal.App.2d 315, 320, 321 [132 P.2d 595] [shareholder succeeded automatically to the ownership of all assets of a dissolved corporation and "[n]o formal transfer was required"].) Corporations Code section 17355 is functionally equivalent to Corporations Code section 2004.

---

[1] Corporations Code section 2004 provides in relevant part: "After determining that all the *known debts* and liabilities of a corporation in the process of winding up have been paid or adequately provided for, the board shall distribute all the remaining corporate assets among the shareholders according to their respective rights and preferences or, if there are no shareholders, to the persons entitled thereto."

In *Historic Smithville Develop. v. Chelsea Title, etc.* (1981) 184 N.J. Super. 282 [445 A.2d 1174], affirmed in part and reversed in part on other grounds in *Hist. Smithville Dev. v. Chelsea Title & Guar.* (1983) 190 N.J. Super. 567 [464 A.2d 1177], the court found that a shareholder, who received real property pursuant to the dissolution of a corporation, acquired title by operation of law and was thus an insured under a title insurance policy containing the identical definition of insured as the policy here. The court stated: "[T]ransfers in dissolution, pursuant to a statute, in cases where, as here, there are no creditor problems, are the perfunctory discharge of a legal obligation to invest shareholders with assets to which they are entitled. Such action is required by law and may therefore be said to be 'by operation of law.' " (*Historic Smithville Develop. v. Chelsea Title, etc., supra*, at p. 1179.)

We agree with appellants that as members of the LLC they would succeed by operation of law to the dissolving LLC's assets. But the problem with appellants' argument is that here the property did not simply devolve to members of the LLC upon the dissolution of the LLC; it was transferred by grant deed from the LLC to appellants as trustees of a family trust.

## B. *Transfer of Title to the Trustees*

The grant deed shows that the property was transferred from the LLC to appellants in their capacities as trustees of their family trust, and not in their individual capacities. There is no suggestion that appellants' interest in the LLC was held through this trust.

Appellants argue that the fact that title to the property was transferred to them in their capacities as trustees of their family trust instead of to them directly as individuals is immaterial. They rely on *Baehr Bros. v. Com.* (1979) 487 Pa. 233 [409 A.2d 326], a tax case, in which the issue was whether a transfer tax could be imposed on a deed conveying property from a dissolved corporation to its shareholders in their capacity as trustees for the shareholders. The shareholders had adopted resolutions to dissolve and liquidate the corporation and had executed an agreement to that effect. The agreement created a trust to hold any real estate not liquidated at the time of distribution until the property was sold or distributed to the shareholders. (*Id.*, 409 A.2d at p. 327.) After the shareholders surrendered their stock certificates to the corporation, a certificate of dissolution was filed and a deed conveying the property from the corporation to the trustees was recorded. (*Id.* at p. 328.)

The Pennsylvania Supreme Court concluded that no transfer tax could be imposed because beneficial title to the corporation's real property vested in

the shareholders by operation of law on the date resolutions for the dissolution and liquidation of the corporation were adopted, and that such vesting did not require a confirmatory deed. (*Baehr Bros. v. Com., supra*, 409 A.2d at pp. 328–329.) The court noted that it would be elevating form over substance to require the corporation to make and record a deed to the shareholders as part of the liquidation and to then require the shareholders to record a second deed from themselves to the trustees. (*Id.* at p. 329.) The court found that the actual transfer effected by the deed was from the shareholders jointly, to the trustees jointly, according to the number of shares they held, and that there was no proportional change in their beneficial interest. (*Id.* at pp. 328–329.)

Appellants argue that as the only members of the LLC they each held a 50 percent beneficial interest in the property and when they directed the property be transferred to them as trustees of their family trust, each continued to hold the same beneficial interest in the property. They reason that the transfer of the property from the LLC directly to its members as trustees of a family trust effected only a change in the method of holding legal title, not a change in their proportional beneficial interest. They point out that pursuant to Revenue and Taxation Code, section 62, subdivision (a)(1), the Legislature has determined that there is "no change in ownership" involving "[a]ny transfer between coowners that results in a change in the method of holding title to the real property transferred without changing the proportional interests of the coowners in that real property."

There are several problems with this argument. First, there is no evidence in the record to support appellants' assertion that as trustees they continued to hold the same proportional interest in the property as they did as members of the LLC. The trust document is not part of the record and therefore the identity of the trustees and beneficiaries cannot be determined. (See *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295 [240 Cal.Rptr. 872, 743 P.2d 932] [appellant has burden of providing an adequate record on appeal].)

■    Second, appellants disregard the legal significance of a limited liability company. As members of the LLC, appellants never held an ownership interest in the property to which the LLC held title. Corporations Code section 17300 provides: "A membership interest and an economic interest in a limited liability company constitute personal property of the member or assignee. A member or assignee has no interest in specific limited liability company property." (See *Denevi v. LGCC, LLC* (2004) 121 Cal.App.4th 1211, 1214, fn. 1 [18 Cal.Rptr.3d 276] ["Like corporate shareholders, members of a

limited liability company hold no direct ownership interest in the company's assets."]; *PacLink Communications Internat., Inc. v. Superior Court* (2001) 90 Cal.App.4th 958, 964 [109 Cal.Rptr.2d 436] [same].) As these opinions explain, a limited liability company is a hybrid business entity formed under the Corporations Code consisting of at least two members who own membership interests. The company has a legal existence separate from its members. While members actively participate in the management and control of the company, they have limited liability for the company's debts and obligations to the same extent enjoyed by corporate shareholders. (*Denevi, supra,* at p. 1214, fn. 1; *PacLink, supra,* at p. 963; see also *Northwest Energetic Services, LLC v. California Franchise Tax Bd.* (2008) 159 Cal.App.4th 841, 852 [71 Cal.Rptr.3d 642].)

■ Finally and most importantly, the issue before us is not whether there was a change in the beneficial ownership of the property, but rather whether appellants, as trustees of their family trust, succeeded as insureds under the terms of the policy. There is nothing in the policy definition of "insureds" that identifies "beneficial owners" as insureds. Under the terms of the policy, appellants could only become insureds by operation of law. The transfer of property by an insured into a family trust is a voluntary act and not one that arises by operation of law. (See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2008) ¶ 6:2558.1, p. 6H-8 (rev. # 1, 2004) ["When the insured transfers title to his or her family trust, . . . the CLTA Standard Policy does *not* automatically extend coverage to the trustee. However, an endorsement for that coverage may be purchased."]; see also Cal. Title Insurance Practice (Cont.Ed.Bar 2d ed. 2008) § 6.61, p. 167 [same].) Thus, even if appellants had individually succeeded to the LLC's interest in the property upon the LLC's dissolution, the transfer of title to themselves as trustees did not arise by operation of law because appellants were not members of the LLC in their capacities as trustees. We are not at liberty to rewrite the policy to achieve the result appellants seek. ■ " '[W]e do not rewrite any provision of any contract, [including an insurance policy], for any purpose.' " (*Rosen v. State Farm General Ins. Co.* (2003) 30 Cal.4th 1070, 1073 [135 Cal.Rptr.2d 361, 70 P.3d 351], quoting *Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 968 [103 Cal.Rptr.2d 672, 16 P.3d 94], brackets added in *Rosen.*) We find that the transfer of the property's title from the LLC as the named insured to the nonmember trustees terminated coverage under the policy as a matter of law.

## C. Appellants Are Not "Distributees"

Appellants make one final argument to support coverage under the policy. The policy defines insureds as "those who succeed to the interest of the named insured by operation of law as distinguished from purchase including, but not limited to, . . . distributees . . . ." Appellants argue that they received the property by operation of law as "distributees" regardless of whether the LLC was dissolved because they did not purchase the property. They point out that no money changed hands and that the grant deed shows that no transfer tax was paid. Respondent disputes that no consideration was exchanged, arguing that the transfer allowed appellants to take advantage of certain financial and estate planning benefits. But we need not decide this issue because even assuming there was no purchase here, we find no merit to this argument.

Appellants rely on Corporations Code section 17001, subdivision (j), which defines "distribution" as "the transfer of money or property by a limited liability company to its members without consideration." But appellants ignore that title passed to them as trustees, and they were not members of the LLC as trustees. Appellants would qualify as distributees under Corporations Code section 17001, subdivision (j) only in their individual capacities.

Appellants also argue that so long as the property was not acquired by purchase, any distribution of the property would occur by operation of law and coverage would continue. But such an interpretation not only ignores the controlling phrase "by operation of law," it deprives it of all meaning. A transfer can occur that does not involve a purchase, but nevertheless does not arise by operation of law. For example, a gift of the property may not involve the exchange of any consideration, but a donee cannot be said to succeed to the property by operation of law. A transfer of property by gift is clearly a voluntary act that does not arise automatically upon death or dissolution. The term "distributee" is merely an example of the kind of transferee who might "succeed to the interest of the named insured by operation of law." The terms of an insurance policy must be interpreted "in context" and effect must be given "to every part" of the policy with " 'each clause helping to interpret the other.' " (*Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115 [90 Cal.Rptr.2d 647, 988 P.2d 568]; see Civ. Code, § 1641.) Appellants read the term "distributee" in isolation and out of context. We find no merit in their argument that as trustees they were distributees by operation of law simply because they did not purchase the property.

## DISPOSITION

The summary judgment in favor of respondent is affirmed. Respondent is entitled to its costs on appeal.

Boren, P. J., and Ashmann-Gerst, J., concurred.

A petition for a rehearing was denied March 3, 2009, and appellants' petition for review by the Supreme Court was denied April 29, 2009, S171375.