Filed 1/12/17

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SWART ENTERPRISES, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> FRANCHISE TAX BOARD, <br><br> Defendant and Appellant. | F070922 <br><br> (Super. Ct. No. 13CECG02171) <br><br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County. Kristi Culver Kapetan, Judge.

Kamala D. Harris, Attorney General, Paul D. Gifford and Diane Spencer Shaw, Assistant Attorneys General, Molly K. Mosley, Jane O'Donnell, and Craig D. Rust, Deputy Attorneys General, for Defendant and Appellant.

Silverstein & Pomerantz, Amy L. Silverstein, Edwin P. Antolin, and Edward J. Beeby for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

California's franchise tax is imposed on every corporation that is "doing business" within California, whether or not it is incorporated, organized, qualified, or registered

under California law.  (Rev. & Tax. Code,[1] § 23151, subd. (a).)  The phrase "doing business," for purposes of the franchise tax, means "actively engaging in any transaction for the purpose of financial or pecuniary gain or profit."  (§ 23101, subd. (a); see Cal. Code Regs., tit. 18, § 23101 (Regulation 23101).)  The minimum liability for all corporations falling within the purview of section 23151 is $800 per year.  (§ 23153, subd. (d)(1).)

The issue before us is whether the franchise tax applies to an out-of-state corporation whose sole connection with California is a 0.2 percent ownership interest in a manager-managed California limited liability company (LLC) investment fund.  We conclude passively holding a 0.2 percent ownership interest, with no right of control over the business affairs of the LLC, does not constitute "doing business" in California within the meaning of section 23101.  We affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL HISTORY

This appeal is based on the parties' cross-motions for summary judgment.  There are no material facts in dispute.

Swart Enterprises, Inc. (Swart), is a small family-owned corporation, incorporated in Iowa.  Swart operates a 60-acre farm in Kansas, where it occasionally feeds cattle for beef sales in Nebraska.  Its place of business and headquarters are located in Iowa.  Swart has no physical presence in California, such as real or personal property, or employees; it does not sell or market products or services to California; and it is not registered with the California Secretary of State to transact interstate business.

In 2007, Swart invested $50,000 in Cypress Equipment Fund XII, LLC (Cypress LLC or the Fund) and became a member of the LLC.  Swart's investment amounted to a 0.2 percent ownership interest.  This is Swart's sole connection with California.

---

[1]All undefined statutory citations are to the California Revenue and Taxation Code unless otherwise indicated.

Cypress LLC was formed as an LLC under California law in 2005 for purposes of acquiring, holding, leasing, and disposing of capital equipment. The LLC is manager-managed, as opposed to member-managed. Under Cypress LLC's articles of organization and operating agreement, the sole manager of the fund, Cypress Equipment Management Corporation III, was given "full, exclusive and complete authority in the management and control of the business of the Fund …."

Swart was not involved in any way in Cypress LLC's operations or management. In fact, "Members other than the Manager [were prohibited from taking] part in the control, conduct or operation of the Fund and [had] no right or authority to act for or bind the Fund." Thus, members had no authority to act as an agent, bind, execute an instrument on behalf of Cypress LLC, or to otherwise act in any way on its behalf.

In 2009 and 2010, Cypress LLC elected to be taxed as a partnership under federal and state law. During these same years, Cypress LLC was not required to pay taxes pursuant to section 18633.5, subdivision (e)(1) because the Fund had insufficient income.

In 2010, Swart passively held its 0.2 percent investment. However, based on its ownership interest in Cypress LLC, the Franchise Tax Board (FTB) demanded that Swart file a California corporate franchise tax return for the tax year ending June 30, 2010, and pay the $800 minimum franchise tax due on that return. Swart paid the tax, which amounted to $1,106 with penalties and interest, but contested it and requested a refund.

To be required to file a California corporation franchise tax return and pay the $800 minimum tax, Swart had to be incorporated in California, qualified to transact business in California, or actively doing business in California. (§ 23153, subds. (a), (b)(1)-(3).) The FTB concluded Swart was doing business in California based on the fact it held an ownership interest in Cypress LLC, and Cypress LLC had elected to be treated as a partnership for purposes of federal income taxes. The FTB explained under section 23101, "A foreign business entity (partnership, LLC, or corporation) is considered doing business in California if it is a member of an LLC that is doing business in California,"

3.

and under section 23151, corporations doing business in the State of California must file a tax return and pay the annual minimum franchise tax of $800.

Swart claimed it was not subject to the franchise tax because it held no other investments in California, it did not otherwise do business in California, and it was only a passive member in Cypress LLC. Swart further claimed imposition of the franchise tax violated the due process clause and commerce clause of the United States Constitution. The FTB denied Swart's request for refund.

Swart timely filed a complaint seeking a tax refund and declaratory relief. After briefing and argument on the parties' cross-motions for summary judgment, the trial court entered an order granting Swart's motion for summary judgment and denying the FTB's motion for summary judgment. Swart was awarded a refund in the amount of $1,106.71.

On November 25, 2014, notice of entry of judgment was served.

On January 16, 2015, the FTB filed a timely notice of appeal.

## ANALYSIS

### I. Swart Was Not "Doing Business" in California

The Attorney General contends Swart was doing business in California because Cypress LLC elected to be treated as a partnership for federal income taxation purposes, and because Cypress LLC is doing business in California, so is Swart. We disagree.

Although this matter calls for our independent judgment, our views are substantially consistent with the trial court's ruling, which we find to be logical and well-reasoned. We are not persuaded Swart may be deemed to be doing business in California because it owns a 0.2 percent interest in a manager-managed LLC doing business in California. Swart's only connection to California was a mere 0.2 percent ownership interest it *passively* held during the tax year the franchise tax was imposed. This interest closely resembled that of a limited, rather than general, partnership as evinced by the fact

4.

Swart had no interest in the specific property of Cypress LLC, it was not personally liable for the obligations of Cypress LLC, it had no right to act on behalf of or to bind Cypress LLC and, most importantly, it had no ability to participate in the management and control of Cypress LLC. Because the business activities of a partnership cannot be attributed to limited partners (*Appeals of Amman & Schmid Finanz AG* (1996) 96 SBE 008 [1996 Cal. Tax LEXIS 62] (*Amman & Schmid*)), Swart cannot be deemed to be "doing business" in California solely by virtue of its ownership interest in Cypress LLC.

## A.     Standard of Review

The interpretation and application of a tax statute to uncontradicted facts is a pure question of law, which we review de novo. (*Communications Satellite Corp. v. Franchise Tax Bd.* (1984) 156 Cal.App.3d 726, 746.) We also review de novo the grant of a motion for summary judgment, particularly where issues of statutory interpretation and constitutional claims are presented. (*Penrod v. County of San Bernardino* (2005) 126 Cal.App.4th 185, 189.)

## B     Discussion

### 1.     Swart Was Not "Doing Business" in California Under the Plain Language of Section 23101 and Regulation 23101

California's franchise tax is imposed on the net income of every corporation "doing business within the limits of this state." (§ 23151, subd. (a).) For tax years prior to January 1, 2011, section 23101 defined "doing business" as "actively engaging in any transaction for the purpose of financial or pecuniary gain or profit."[2] (Former § 23101, now § 23101, subd. (a).) The term "actively" is the opposite of "passively" or

---

[2]This definition was designated as subdivision (a) of amended section 23101. (Stats. 2009-2010, 3d Ex. Sess., ch. 10, § 7, eff. Feb. 20, 2009.) For tax years beginning on or after January 1, 2011, a taxpayer is also "doing business" in California if the taxpayer is organized or commercially domiciled in California, or a taxpayer's California sales, property, or payroll exceed the amounts applicable under subdivision (b)(1) of section 23101. Because the franchise tax was imposed for Swart's tax year ending June 30, 2010, these new bases for "doing business" do not apply to Swart.

"inactively" and means "active transaction for pecuniary gain or profit."  (*Golden State Theatre & Realty Corp. v. Johnson* (1943) 21 Cal.2d 493, 496 (*Golden State Theatre*); *Hise v. McColgan* (1944) 24 Cal.2d 147, 151.)  For example, "the purchase and sale of stocks or bonds" may constitute doing business within the meaning of section 23101, but "[t]he mere receipt of dividends and interest by a corporation and the distribution of such income to its shareholders does not."  (Regulation 23101, subds. (a), (b).)

Here, the $800 minimum franchise tax was imposed upon Swart several years after Swart made its investment and became a member of Cypress LLC.  We are not persuaded such an investment, without more, is sufficient to conclude Swart was doing business in California.  Like a shareholder's receipt of dividends and interest, Swart merely passively held onto its investment in the tax year the franchise tax was imposed.

Nonetheless, citing to *Golden State Theatre*, *supra*, 21 Cal.2d 493, the Attorney General claims the term "doing business" should be interpreted broadly to include Swart's passive investment.  There, according to the Attorney General, our Supreme Court held that "an out-of-state taxpayer's passive investment in California was a transaction for pecuniary gain or profit, so the resulting dividends were subject to California tax."

*Golden State Theatre* does not suggest the term "doing business" should be interpreted broadly.  There, the plaintiff, Golden State Theatre and Realty Corporation, owned a 50 percent share of stock in a corporation, East Bay Theatres, Inc., which in turn owned a 100 percent share of stock in two other corporations.  (*Golden State Theatre*, *supra*, 21 Cal.2d at p. 494.)  The plaintiff argued dividends received from its ownership interests were deductible from its gross income as "'dividends received during the income year from a … corporation doing business in this State declared from income arising out of business done in this State ….'"  (*Ibid.*)

The issue was whether East Bay Theatres, Inc., was merely a holding company or whether it was doing business in California, which would entitle the plaintiff to claim the

6.

deductions. (*Golden State Theatre*, *supra*, 21 Cal.2d at p. 494.) The defendant argued the entity was not actively engaged in any transaction because East Bay Theatres, Inc., was not established to operate a business, but to acquire property and derive income from properties, which did not even occur regularly. (*Id*. at p. 495.) Our Supreme Court concluded the activities conducted by East Bay Theatres, Inc., demonstrated it was "doing business," because it had *actively engaged* in multiple transactions for pecuniary gain. (*Id*. at p. 496.) Specifically, it undertook the following activities: endorsing a note of a subsidiary, borrowing funds, purchasing, owning and renting property, collecting rents, giving notices to quit, and arranging for improvements to property. (*Id*. at p. 495.)

*Golden State Theatre* illustrates the distinction between "actively," and "passively" or "inactively" engaging in business transactions. It does not suggest the term "doing business" should be read broadly.

### 2. There Is No Authority to Support the Conclusion Cypress LLC's Taxation Election Rendered Swart a General Partner of Cypress LLC

The Attorney General further contends Swart was a general partner of Cypress LLC based on an election by Cypress LLC to be treated as a partnership for purposes of federal income taxes. According to the Attorney General, if Cypress LLC is treated as a partnership, then Swart is a general partner of the LLC, and Swart can therefore be imputed with "doing business" in California because Cypress LLC was doing business in California. This is because the activities of a partnership can be attributed to a general partner. We are not persuaded Swart's interest in Cypress LLC was transmuted into a general partnership interest for purposes of the franchise tax.

A taxation election refers to a business entity's ability to choose its classification for federal income tax purposes by making a check-the-box election. (26 C.F.R. §§ 301.7701–1 through 301.7701–3 (2017) [check-the-box regulations].) LLC's are not recognized as an entity choice for federal or California tax law purposes. (See 26 C.F.R.

§ 301.7701–2 (2017); § 23038, subd. (b)(2)(B)(ii), (iii); see also Cal. Code Regs., tit. 18, § 23038(b)-3, subd. (c).) Accordingly, for tax purposes, a multiple-member LLC can elect to be treated as either a partnership or a corporation under the check-the-box election regulations. California tax law conforms to the federal entity classification election system by mandating that an eligible entity be either classified or disregarded[3] for California tax purposes, just as it is for federal tax purposes. (See § 23038, subd. (b)(2)(B)(ii), (iii); Cal. Code Regs., tit. 18, § 23038(b)-3, subd. (c).)

The Attorney General asserts an LLC member is rendered a general partner of the LLC as a result of an LLC's election to be treated as a partnership for federal taxation purposes. We are not directed to any legal authority to support this conclusion. The trial court identified this same deficiency in the Attorney General's motion below, but the error was not corrected on appeal. We note the Treasury Regulations (26 C.F.R. §§ 301.7701-1, 301.7701-2 & 301.7701–3 (2017)) do not address whether an LLC making a partnership election is considered a general partnership or a limited partnership for federal tax purposes, or whether LLC members are considered general or limited partners.

Nonetheless, relying on the assumption Swart owns a general partnership interest in Cypress LLC and that this classification is relevant for purposes other than the computation of income taxes, the Attorney General directs us to Internal Revenue Code section 702. Internal Revenue Code section 702 provides that for federal income tax purposes, the character of an item of income, gain, loss, deduction, or credit included in a partner's distributive share is be determined at the partnership level, i.e., "as if such item

---

[3]A "disregarded entity" refers to an entity that is separate from its owner, but elects to be disregarded as an entity separate from its owner for tax purposes. Thus, a single-member LLC classified as a disregarded entity will be treated as a sole proprietorship on the LLC owner's tax return. (Comment, *The Federal Tax Personality of Disregarded LLCs [Littriello v. United States, 484 F.3d 372 (6th Cir. 2007)]* (2007) 47 Washburn L.J. 203, 218.)

were realized directly from the source from which realized by the partnership, or incurred in the same manner as incurred by the partnership." (Int.Rev. Code, § 702(b).)

The Attorney General ostensibly directs us to Internal Revenue Code section 702 to make the following point: wherever the partnership does business, the activities of the partnership are attributed to each partner, whether general or limited, with the consequence that in locations where the partnership is doing business, the partners are also doing business. This is because a partner is recognized as deriving a share of partnership income and loss from the place where the partnership transacts its business.

To explain why this conclusion is flawed, we first examine the Attorney General's claim that a taxation election is relevant for purposes other than federal income taxes. The plain language of the check-the-box regulations provides that a taxation election applies for "federal tax purposes" and not just for "federal *income* tax purposes." (26 C.F.R. § 301.7701–1(a)(1) (2017).) The absence of language of limitation suggests the LLC's election is relevant for tax purposes beyond the computation of federal income taxes.

Swart disagrees and contends an LLC is a separate entity from its owners, and an LLC's decision to be taxed as a partnership for federal income taxes does not mean the LLC's separate entity status may be disregarded for all taxation purposes, including the franchise tax. Swart directs us to *Pierre v. Comm'r* (2009) 133 T.C. 24 (*Pierre*) on this point.

In *Pierre, supra*, 133 T.C. 24, the United States Tax Court considered whether the check-the-box regulations altered the federal gift tax valuation regime. (*Id.* at pp. 26-27.) The taxpayer was a New York resident who wanted to give money to her son and granddaughter. (*Id.* at p. 25.) To ensure the family's wealth stayed intact, the taxpayer formed a single-member LLC, created trusts for both her son and granddaughter, and transferred $4.25 million in cash and securities to the LLC in exchange for a 100 percent interest in the entity. (*Ibid.*) The taxpayer then transferred a 9.5 percent interest in the

9.

LLC to each trust, and sold each of the trusts a 40.5 percent interest in the LLC in exchange for promissory notes.  (*Ibid*.)  The taxpayer paid gift tax in the amount of $256,168 per transfer, the value of the interests transferred after discounts for lack of marketability and lack of control.  (*Id*. at p. 26.)  The Internal Revenue Service claimed because the LLC was a disregarded entity, which is indistinguishable from its owner, the taxpayer should have valued the gift as a transfer of the underlying assets, minus the value of the promissory notes, which would have amounted to a substantially greater tax burden.  (*Ibid*.)

The tax court held that although a single-member LLC was treated as a disregarded entity under the federal check-the-box regulations, that designation did not control the valuation of the LLC interests transferred for federal gift tax purposes. (*Pierre, supra*, 133 T.C. at p. 35.)  According to the tax court, state laws applicable to the LLC controlled the legal rights of the parties, not the LLC's taxation election, and the legal relationships between the parties justified discounts for lack of control and marketability.  (*Ibid*.)

The Attorney General argues *Pierre* is distinguishable because there, a single-member LLC was at issue, and a single-member LLC cannot elect to be treated as a partnership for tax purposes.  The Attorney General's argument misses the point.  *Pierre* stands for the proposition that a taxation election may not control for all taxation purposes in all circumstances.

Assuming, arguendo, that a taxation election is relevant for purposes of determining whether an LLC member is doing business in California under section 23151, the Attorney General's conclusion is flawed for one other significant reason:  it draws no distinction between general and limited partnership interests.  The State Board of Equalization (SBE) has previously recognized a limited partner is not "doing business" merely by virtue of its ownership interest in a limited partnership.

In *Amman & Schmid, supra*, 96 SBE 008 [1996 Cal. Tax LEXIS 62], the appellants, foreign corporations, acquired limited partnership interests in descending tiers of limited partnerships. The bottom tier of the partnerships were indisputably doing business in California. The FTB claimed the appellants were also "doing business" in California under section 23101 because the general partners were executing business transactions in California as agents for the limited partnerships and all the partners. The corporate limited partners challenged this finding, because "doing business" requires "actively engaging in any transaction for the purpose of financial or pecuniary gain or profit." (*Id.*, subd. (a).) While section 23101 does not require a regular course of business, "it nevertheless does require active participation in the profit-seeking activity, and limited partners are necessarily passive or inactive members of the partnership." (*Amman & Schmid, supra*, at p. 3 [1996 Cal. Tax LEXIS 62 at p. *5].)

The SBE noted that under the California Revised Limited Partnership Act (Corp. Code, tit. 2, ch. 3), the foreign corporations, as limited partners, were not liable for the obligations of the partnerships (*id.*, former § 15632), they could not act on behalf of the partnership, had no interest in specific property of the partnership (*id.*, former § 15671), and their ownership interests included only intangible property, which is ordinarily located at the domicile of the limited partner. (*Amman & Schmid*, *supra*, 96 SBE 008 at p. 4 [1996 Cal. Tax LEXIS 62 at pp. *8-9], citing *Appeals of Amyas and Evelyn P. Ames et al.* (1987) 87 SBE 042.) The SBE concluded the corporate limited partners could not be doing business in California simply because they owned interests as limited partners in partnerships engaged in business in California because "[a] general partner simply does not have agency rights over the obligations or the property of the limited partners." (*Amman & Schmid*, *supra*, at p. 4 [1996 Cal. Tax LEXIS 62 at p. *9].)

The SBE noted it had previously concluded otherwise. In *Appeal of H.F. Ahmanson & Company* (1965) 65 SBE 013 [1965 Cal. Tax LEXIS 38], (*H.F. Ahmanson*), the SBE concluded the source of a limited partner's income or loss from the partnership

is where the partnership property is located and the partnership activity is carried on. (*Id.* at p. 3 [1965 Cal. Tax LEXIS 38 at p. *4.) As a result, partnership losses were determined to be sourced in Turkey and not in California, because the partnerships were regularly engaged in business in Turkey and the appellant, a limited partner, was therefore also engaged in business in Turkey. In *Amman & Schmid*, the SBE changed its position, explaining, "This observation is arguably true for general partnerships. But … more specific examination has convinced us … this … is not necessarily true for limited partners." (*Amman & Schmid*, *supra*, 96 SBE 008 at p. 4 [1996 Cal. Tax LEXIS 62 at p. *11].)

*Amman & Schmid* strongly supports the conclusion Swart was not doing business in California. Like the limited partners in *Amman & Schmid*, Swart had no interest in the specific property of Cypress LLC (Corp. Code, former § 17300), it was not personally liable for the obligations of Cypress LLC (*id.*, former § 17101, subd. (a)), it had no right to act on behalf of or bind Cypress LLC (*id.,* former § 17157, subd. (b)(1), (2)), and Swart was prohibited from participating in the management and control of Cypress LLC.

The Attorney General claims *Amman & Schmid* is distinguishable because it examined limited partnerships exclusively, rather than LLC's, when it concluded "doing business" requires an active role in a limited partnership, rather than a passive investment in a limited partnership. The Attorney General further contends *Amman & Schmid* "does not even acknowledge that limited partnerships can elect to be treated as general partnerships for purposes of franchise income taxation."

We are perplexed by these arguments. If an LLC's taxation election renders the LLC and its members partners for all taxation purposes, then no meaningful distinction can be drawn between the limited partnership interests in *Amman & Schmid* and Swart's partnership interest.[4] Although it is unclear to us what the Attorney General means by

_____

[4]The Attorney General directs us to a number of cases purportedly recognizing that the activities of a partnership are attributed to each partner, such that the partners are doing business

12.

stating a "limited partnership[] can elect to be treated as [a] general partnership[]" for income tax purposes, we are not directed to any legal authority to support the conclusion that an LLC's taxation election automatically transmutes LLC members into general partners for tax purposes relevant to this appeal. As we explain below, Swart's partnership interest was akin to a limited rather than general partnership interest.

### 3. Swart's Interest in Cypress LLC Was Comparable to a Limited Partnership Interest

Swart contends that like a limited partner, it was merely a passive investor, and it had no right to manage or control the business operations of Cypress LLC. On this basis, it asserts it cannot be deemed to be "doing business" in California solely by virtue of holding a membership interest in an LLC doing business in California. We agree.

Members in an LLC have limited liability for the company's debts and obligations (*Kwok v. Transnation Title Ins. Co.* (2009) 170 Cal.App.4th 1562, 1571), and members hold no direct ownership interest in the company's specific property. (Corp. Code, former § 17300.) Similarly, "A limited partner's interest in [a] partnership is intangible

---

where the partnership is doing business. None of these cases answer the question of whether a foreign entity such as Swart may be deemed to be "doing business" in California for purposes of the franchise tax, by virtue of its ownership interest in a California manager-managed LLC doing business in this state. (See *Appeal of John Manter* (1999) 99 SBE 008 [1999 Cal. Tax LEXIS 500] [nonresident taxpayer contested tax based on pass-through income from California source of an S corporation].) Moreover, many of these cases rely on outdated authority which held that partnerships are not regarded as separate legal entities for purposes of owning property. (See *H.F. Ahmanson*, *supra*, 65 SBE 013 [1965 Cal. Tax LEXIS 38] [limited partner in California partnership engaged in activities in Turkey denied California deductions for losses resulting from partnership activities in Turkey where general partner was held to be an agent of the limited partner, and general and limited partners are owners of partnership's property]; *Appeal of Estate of Marion Markus* (1986) 86 SBE 097 [1986 Cal. Tax LEXIS 136] [relying on *H.F. Ahmanson*, nonresident taxpayer's income from California limited partnership held to be from California, where property of partnership was located and where partnership's activities were carried on]; *Appeal of Lore Pick* (1985) 85 SBE 066 [1985 Cal. Tax LEXIS 112] [same]; *Appeal of Custom Component Switches, Inc.* (1977) 77 SBE 009 [1997 Cal. Tax LEXIS 110] [relying on *Ahmanson*, California corporation denied deductions arising from losses attributable to partnership property located outside California].) One additional case we are directed to is unpublished authority and may not be cited or relied upon. (*Appeal of CFL, LP* (2014) case No. 764609 [nonpub. opn.].)

13.

personal property, which ordinarily is located in the domicile of the limited partner."
(*Amman & Schmid*, *supra*, 96 SBE 008 at p. 4 [1996 Cal. Tax LEXIS 62 at pp. *8-9],
citing *Appeals of Amyas and Evelyn P. Ames et al.*, *supra*, 87 SBE 042.)  Although
members of an LLC may generally participate in the management and control of the
business (*PacLink Communications Internat., Inc. v. Superior Court* (2001) 90
Cal.App.4th 958, 963), whereas limited partners risk losing their limited liability
protection by doing so (Corp. Code, § 15903.03, subd. (a)), this ability ultimately
depends on how management is vested within the parties' operating agreement and
articles of incorporation.

Relations among members and the LLC are governed by its articles of
incorporation and operating agreement.  (Corp. Code, former § 17005, subd. (a), as
amended by Stats. 1996, ch. 57, § 5, and repealed by Stats. 2012, ch. 419, § 19, operative
Jan. 1, 2014.)  Where an LLC is established as a manager-managed LLC, "any matter
relating to the activities of the limited liability company is decided exclusively by the
managers."  (Corp. Code, § 17704.07, subd. (c)(1).)  While LLC members have the
ability to remove the manager with a majority vote (*id.*, subd. (c)(4), (5)), they have no
right to control the management and conduct of the LLC's activities, nor do they have the
apparent authority to do so (see Corp. Code, § 17703.01, subd. (a) [every member of a
member-managed LLC is an agent of the LLC for the purpose of its business or affairs].)

Here, the operating agreement executed by Cypress LLC and its members
established the Fund as a manager-managed LLC.  The operating agreement gave the
manager "'full exclusive and complete authority in the management and control of the
business of the Fund for the purposes [stated in the Operating Agreement] and [made] all
decisions affecting the fund.'"  The specific matters upon which Cypress LLC members
were authorized to act did not empower members to manage or control Cypress LLC.  In
fact, the agreement expressly prohibited "[m]embers other than the Manager [from
taking] part in the control, conduct or operation of the Fund and [had] no right or

14.

authority to act for or bind [Cypress LLC]." The Attorney General does not contend Swart acted outside of the operating agreement.

Thus, the relationship between Cypress LLC and Swart supports the conclusion Swart was a quintessential passive investor. Swart had no authority to participate in the management and control of the Fund, it was not liable for the debts and obligations of the Fund, it did not own an interest in specific property of the Fund, nor could it act on behalf of the Fund. Under these circumstances, Swart's interest in Cypress LLC was akin to that of a limited partner, and it cannot be deemed to be "doing business" in California by virtue of the fact Cypress LLC was "doing business" in California.

The Attorney General contends members of an LLC are themselves doing business in California by virtue of their ownership interest in the LLC, whether or not they are members of a member-managed LLC or a manager-managed LLC. It appears this conclusion was derived from a legal ruling issued by the FTB during the pendency of litigation in this matter. (Cal. Franchise Tax Bd., Legal Ruling No. 2014-01 (July 22, 2014) [2014 Cal. FTB LEXIS 2].) To the extent the arguments on appeal were also derived from the FTB's legal ruling, we disagree with its analysis and note it contradicts the position previously taken by the FTB.[5]

In its legal ruling, the FTB discussed a hypothetical assuming a California LLC is "doing business" in California. The FTB concluded that a member corporation holding a 15 percent interest in an LLC, not incorporated, organized, or registered to do business in

[5]In its Technical Advice Memorandum No. 200658 (Dec. 22, 2000) (TAM) [2000 Cal. FTB TAM LEXIS 28], the FTB's legal department concluded, "For purposes of doing business, [where an out-of-state LLC member] is a separate entity and receives California source income from [the LLC,] [t]he [out-of-state LLC member] is not considered to be doing business in California." The out-of-state corporation was still subject to California income tax, absent an exemption application, but it was not subject to the corporation franchise tax fee because it was not "doing business" in California. In the TAM, the FTB relied on *Amman & Schmid*, *supra*, 96 SBE 008 at page 2 [1996 Cal. Tax LEXIS 62 at p. *3], noting it had previously concluded a foreign corporation, which was a limited partner in a California partnership, was not doing business in California.

15.

California, and with no presence in California other than its membership in the LLC, must nonetheless file a return and pay all taxes and fees resulting from its membership interest in the LLC. (Cal. Franchise Tax Bd., Legal Ruling No. 2014-01, *supra*, at p. 9 [2014 Cal. FTB LEXIS 2 at p. *21].) The FTB explained because the LLC is classified as a partnership for tax purposes and is doing business in California, all of its members are also doing business in California. (*Id*. at p. 3 [2014 Cal. FTB LEXIS 2 at p. *7].) According to the FTB, even a member of a manager-managed LLC is doing business in California, provided the LLC is itself doing business in California:

> "Members of LLCs generally have the right to participate in the management of the business. Part of that power necessarily includes the right to delegate the power to manage the business in favor of a manager, and the power to revoke that delegation at any time. This analysis is not affected by whether or not members participate in the management of an LLC or appoint a manager to do so because the members' rights to participate in the management of the business arise out of the statutory relationship between an LLC and its members.… *'The courts have recognized that the execution of an agreement relinquishing control is itself an exercise of the requisite right of control over the conduct of the partnership business.'* Thus, the distinction between 'manager-managed' LLCs and 'member-managed' LLCs is not relevant for purposes of determining whether a member of an LLC, which is 'doing business' in California and is classified as a partnership for tax purposes, is 'doing business' here within the meaning of Section 23101." (Cal. Franchise Tax Bd., Legal Ruling No. 2014-01, *supra*, at p. 4 [2014 Cal. FTB LEXIS 2 at pp. *9-*10], italics added, fns. omitted.)

The FTB asserts members in manager-managed LLC's have the right to exercise some control over the LLC because they relinquish control of the LLC to the manager, and they have the authority to remove the manager at any time. Applying this logic to the instant matter, the Attorney General argues that members of Cypress LLC, including Swart, had the right to control the Fund, notwithstanding the fact it was manager-managed. The FTB directs us to *Moulin v. Der Zakarian* (1961) 191 Cal.App.2d 184, 190 (*Moulin*) for the proposition that "[t]he execution of an agreement relinquishing

16.

control of the partnership is itself an exercise of the requisite right of control over the conduct of the partnership business."

The FTB's reliance on *Moulin* is unavailing.  The issue before the Court of Appeal in *Moulin* was whether payments made under an alleged partnership agreement constituted investments in a security, which could not lawfully be sold without a permit. (*Moulin, supra*, 191 Cal.App.2d at pp. 185–186.)  The defendant asserted the agreement at issue was intended to be a general partnership agreement, and because all contributions constituted contributions to the capital of the partnership, no permit was required because no interest was sold to the public.  (*Id*. at p. 188.)  The Court of Appeal held, based on the *totality* of the rights and obligations established under the agreement, a general partnership was formed.  (*Id.* at p. 191.)  The fact that the agreement designated managerial control to the defendant was only one of the factors the court relied on in concluding the agreement was a partnership agreement.

Here, unlike *Moulin*, Swart cannot be said to have exercised any right of control by relinquishing control of Cypress LLC to a manager, because it never had this right to begin with.  As the trial court explained, the Attorney General's argument fails to acknowledge Cypress LLC was established as a manager-managed LLC two years before Swart became an investor.  Cypress LLC was formed in 2005 and Swart did not become an investor until 2007.  Swart had no right to control or influence the designation of Cypress LLC as a manager-managed fund.  This designation was made two years before Swart made its investment in Cypress LLC.  Nor is there any basis from which it could be reasonably inferred that Swart could have exercised influence over this decision in light of the fact its ownership interest was merely 0.2 percent.[6]

---

[6]In any event, we note limited partners are vested with a similar right.  Pursuant to Corporations Code section 15904.01, subdivision (d), an individual may become a general partner "with consent of all the partners."  In so doing, a limited partner does not lose its limited partnership status.

Further, while LLC members retain the right to remove the manager, this action can only be taken by a majority vote. (See Corp. Code, former §§ 17150-17152, added by Stats. 1994, ch. 1200, § 27, and repealed by Stats. 2012, ch. 419, § 19, eff. Jan. 1, 2014; on or after Jan. 1, 2014, see Corp. Code, § 17704.07, subd. (c)(5).) Swart could not have removed the manager on its own, and in light of its minimal ownership interest, it would have had only a minimal influence upon the majority's decision in this regard. We decline to hold that such a limited power, conditioned upon the consent of the majority, could give an LLC member the right to manage or control the decision-making process of the LLC, particularly where this right was never exercised.[7]

We conclude Swart was not doing business in California based solely on its minority ownership interest in Cypress LLC. The Attorney General's conclusion that a taxation election could transmute Swart into a general partner for purposes of the franchise tax, and that the business activities of Cypress can therefore be imputed to Swart, is not supported by citation to appropriate legal authority and, in our view, defies a commonsense understanding of what it means to be "doing business."

## II.     Swart's Constitutional Challenges to Imposition of the Franchise Tax

Bearing in mind that a reviewing court should consider a constitutional question only where essential to the disposition of a case, we do not reach Swart's challenge to the franchise tax on constitutional grounds as it was not necessary to the disposition of this

---

[7]At oral argument, the Attorney General argued members of an LLC have an intrinsic right to participate in the management of the LLC, even if that right is bargained away. We disagree. "Relations among members and between members and the [LLC] are governed by the articles of organization and operating agreement." (Corp. Code, former § 17005, subd. (a).) Where the parties' operating agreement designates the LLC as manager-managed and expressly prohibits the non-managing LLC member from participating in the management and control of the LLC, it cannot be said that the member has any such right, intrinsic or otherwise. Although we can envision circumstances where the parties' conduct may evince an LLC member's participation in the control of the LLC, notwithstanding restrictions set forth in the operating agreement, such circumstances are not present here. As noted, the parties do not contend Swart actually participated in the management or control of Cypress LLC's business activities.

18.

matter.  "It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case."  (*Burton v. United States* (1905) 196 U.S. 283, 295.)

## DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs on appeal.

_____

PEÑA, J.

WE CONCUR:

_____

HILL, P.J.

_____

DETJEN, J.